## Standard Steel Car Company, Appellant, *v.* Stamm.

*Contract—Option—Fraud—Information within knowledge of person taking option—Principal and agent.*

Where a person is employed by an agent of a corporation to secure an option on property in a town in which the corporation is about to establish a plant, but the name of the corporation is not disclosed to the sub-agent, and the latter procures the option without revealing to the owner of the property the facts within his knowledge, and thereafter assigns the option to the corporation, which exercises it, the owner of the property cannot defend in a bill in equity filed against him in the name of the corporation and the sub-agent, on the ground that he had been defrauded in not having the facts disclosed to him, before he was induced to give the option.

Argued Oct. 21, 1903.   Appeal, No. 143, Oct. T., 1903, by plaintiffs, from decree of C. P. Butler Co., Dec. T., 1902, No. 6, dismissing bill in equity in case of the Standard Steel Car Company and J. F. Anderson v. J. George Stamm.   Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, and POTTER, JJ.   Reversed.

Bill in equity for specific performance.   Before MILLER, P. J., specially presiding.

The court found the facts to be as follows:

1. The Standard Steel Car Company is a corporation incorporated under the laws of the state of Pennsylvania, whose principal office is in the city of Pittsburg.

2. J. F. Anderson, the other plaintiff, on March 20, 1902, had no interest whatever as a stockholder, or otherwise, in the Standard Steel Car Company, was not employed by it in any capacity whatever, and was not authorized by it directly or indirectly to take options on lands for it in Butler or elsewhere.

3. The defendant, J. George Stamm, on March 20, 1902, was the owner of nine acres of land, more or less, situate in the borough of Butler, and having thereon erected a large two story brick dwelling house, brick kiln, and other buildings necessary to manufacture brick, and being bound on the north by Pillow street, on the east by Willow street, or Fairground street, on which the Butler Passenger Railway line operates, on the south by lands then of Charles Duffy, on the west by

Pierce road or street; that a few days thereafter, and before the acceptance of the alleged written option bearing date of March 20, 1902, the Standard Steel Car Company purchased from Charles Duffy the land abutting on defendant's property on the south and other lands, upon which it has erected a large plant, known as the Standard Steel Car Works; and that since the making of said option the Butler Passenger Railway line has been constructed along Pillow street on the north and Pierce road or street on the west.

4. That on or a few days before March 20, 1902, one W. D. George, representing the Standard Steel Car Company, consulted W. D. Brandon, as attorney for the company, in regard to optioning a large body of land for the purpose of constructing a steel car company plant thereon; that said George between March 21st and March 27th took such options for the Standard Steel Car Company, which said company accepted between April 1st and April 9th, when they were closed up and the money paid, the money for the payment of the purchase price of the land having been expressed to the Butler Savings Bank, and deposited to the credit of W. D. Brandon, attorney for the company, on or about April 1st, who was then and yet is acting as its attorney aiding and assisting in closing up the options; that J. F. Anderson, one of the plaintiffs, and the said W. D. Brandon, consulted together relative to procuring the option on the property of J. George Stamm, the defendant, the said Anderson knowing at the time that a large plant was likely to be located in close proximity to the land of the defendant.

5. That on March 20, 1902, J. F. Anderson, one of the plaintiffs, with the knowledge that some manufacturing plant was about to be located in close proximity to the defendant's land, which information he obtained from W. D. Brandon, attorney for plaintiff campany, procured the name and signature of the defendant to the option in suit; that at that time the said Stamm was ignorant of and had no knowledge or information that a large manufacturing plant was about to be located near his property, and that the said Anderson concealed and suppressed from the defendant the knowledge he had relative thereto, and also the knowledge that certain parties were taking options on the lands adjoining the lands of the defendant, for a manufacturing plant.

6. That a short time after the date of the option in suit the market price of the defendant's land advanced largely in value, and before the expiration of the optional period the market price of defendant's land had advanced in value fully one hundred per cent; and that the plaintiffs and defendant as regards the option are and still remain in statu quo.

7. That on April 1, 1902, the option in suit was accepted in writing by the plaintiff, J. F. Anderson, but the $8,000 was not paid or tendered to the defendant at that time, nor was said money ever paid or tendered within the optional period of sixty days.

8. That no tender of the purchase money mentioned in the option was made to the defendant until on or about September 26, 1902, and not until long after the market value of his property had largely increased.

The court found as a conclusion of law that the complainants were not entitled to specific performance, and accordingly dismissed the bill.

*Error assigned* was decree dismissing the bill.

*T. C. Campbell*, with him *W. D. Brandon*, for appellant.— The contract should have been specifically enforced: Harris v. Tyson, 24 Pa. 347; Rockafellow v. Baker, 41 Pa. 319; Neill v. Shamburg, 158 Pa. 263; Hershey v. Keembortz, 6 Pa. 128; Covanhovan v. Hart, 21 Pa. 495; Laidlaw v. Organ, 2 Wheaton, 178; Kintzing v. McElrath, 5 Pa. 467; Hazlett v. Powell, 30 Pa. 293; Rose v. Barclay, 191 Pa. 594; Weaver's App., 115 Pa. 59.

The information withheld by Anderson was not material to the contract; it did not relate to the property involved but to extrinsic circumstances; it had reference only to the intention, to the contemplated action of a stranger, and the property involved in this case was, and only could be, incidentally affected by it.

There was no duty resting upon Anderson to disclose the information he had; this was especially true, he being the purchaser. And the means of information were equally accessible to both parties. To enforce the contract specifically, therefore, is not inequitable.

The price agreed to be paid to Stamm for the property being a fair, full and adequate one when the contract was made, no injury will be sustained by Stamm if he performs his contract. Specific performance will, therefore, not be inequitable.

*Lev. McQuistion*, with him *J. C. Vanderlin*, for appellee.— To decree specific performance under the facts would operate as a great injustice and hardship to defendant: Andrews v. Bell, 56 Pa. 343; Rennyson v. Rozell, 106 Pa. 407.

OPINION BY MR. JUSTICE BROWN, January 4, 1904:

The material facts in this case are undisputed. Shortly before March 20, 1902, W. D. George went to the town of Butler to procure options to purchase land in his name, but intended really for the benefit of the Standard Steel Car Company, which contemplated the erection of a large plant for the construction of steel cars. He employed W. D. Brandon, Esq., a member of the Butler bar, to assist him, but did not disclose the name of the company he represented. After George had procured options for a number of properties he found it important to procure one for the property of the defendant, which is the subject of this controversy, and, having so informed Mr. Brandon, his attorney, the latter called to their assistance J. F. Anderson, one of the appellants. On March 20, 1902, Anderson took Stamm, the appellee, to Brandon's office and procured the following option: "Received of J. F. Anderson this 20th of March, 1902, five dollars for an option to purchase at any time within sixty days at the price of $14,000, a tract of land in Butler, Pa., bounded north by Pillow street, east by Willow street or Fair Ground Road, south by Charles Duffy and west by public road; containing nine acres, more or less, with the appurtenances. Possession of the house and lot—the residence property—to be given in thirty days after acceptance of this option, and of the balance also in thirty days, except so far as it may be necessary for him to operate his brick yard for the season for which purpose he retains possession until November 1, 1902, and thereafter of the kiln until he can remove his brick, which he agrees then to do with all reasonable diligence. Acceptance of this option to be in writing. The amount of purchase money to be paid eight thousand dollars

on acceptance of option when deed clear of encumbrance is to be made, and balance in payments of $2,000 a year for three years with interest, to be secured by mortgage.

"Attest:                ·J. GEORGE STAMM.        (Seal)
"W. D. BRANDON.          J. F. ANDERSON.        (Seal)"

On April 1, 1902, the option was accepted in writing by Anderson, and subsequently he assigned it to the Standard Steel Car Company, the other appellant.

While Brandon and Anderson knew at the time the option was given that a manufacturing company contemplated locating its plant in Butler, its name had not been disclosed to either of them. When the option was given, the agreement was, that, if it should be exercised by Anderson, Stamm would go to the office of Mr. Brandon and execute the deed. He did not do this, but there were interviews between him and Brandon and Anderson for the purpose of closing the contract, in which he expressed his willingness to perform his part of it, but excused himself for not promptly doing so on the ground that his wife was unwilling to join in the deed, and requested time for the purpose of inducing her to do so. Another reason given by him for asking for delay was, that there was some trouble about car tracks over his land. He subsequently admitted that this latter reason was a mere pretext, and that, as the real reason for his delay was the unwillingness of Mrs. Stamm to join in the deed, he wanted a little more time to talk it over with her. On July 19, 1902, Brandon notified Stamm that the deed for the property would be accepted without its execution by his wife, but he refused to so execute and deliver it to the purchaser. On September 27, 1902, the purchase money of $8,000 and Anderson's bond and mortgage for the balance, according to the contract, were tendered to the defendant, and he still refused to comply with his agreement. This bill was then filed on November 5, 1902, and, under the foregoing facts, was dismissed by the court below, for the reason that, as Anderson had not disclosed to Stamm at the time the option was procured his knowledge of the fact that a manufacturing plant would probably come to Butler, such concealment was a fraud upon Stamm, in the face of which he ought not to be compelled to specifically perform his contract. The

words of the learned trial judge, in his conclusion that the bill ought to be dismissed for the reason stated, are: " Under the undisputed facts in this case it would be inequitable to compel the defendant to convey the land to the plaintiff, the Standard Steel Car Company. The option when taken was not taken for the Standard Steel Car Company, nor by its direction, nor did said company have any knowledge that it was to be taken, or that it had been taken, for some time thereafter. Mr. J. F. Anderson, who took the option, was a volunteer; he had no interest whatever in the premises; he is not asking for a conveyance to himself; he has been in no way injured or wronged by the refusal of the defendant to convey the land; at the time he took the option he believed that a manufacturing plant was coming to Butler, and he had reason to believe that the defendant had no knowledge of the facts relative thereto; his conduct in his dealings with the defendant was in effect fraudulent as to the defendant; Mr. Anderson testifies that he concealed the knowledge he had of the probable coming of some new industry, knowing or believing if he disclosed it, the defendant would ask a higher price for his land than he did; he knew if the plant did come it would greatly enhance the market value of the defendant's property; and, as a fact, it has largely enhanced the value of said property; there is no evidence in the case of an imperative necessity that the car company should own the property of the defendant for the convenient and successful operation of its plant." The statement that Anderson is not asking for a conveyance to himself is an inadvertence, for the prayer of the bill is for a decree that a deed be executed and delivered to him or his co-complainant.

In Anderson's negotiations with Stamm for the option it is not pretended that he made any misstatement or practiced any deception or imposition, or refused, at Stamm's request, to disclose any information which he possessed. As a matter of fact, he was in possession of no definite information. It was limited to the probability that a company, unknown and unnamed to him, might locate in Butler, and, among other lands, might need that of the defendant for its business purposes. As we gather from the testimony, he, with other citizens of the place, was anxious to have the manufacturing company come among them, and, most naturally, was willing to assist in the move-

ment to induce it to do so.   With not the slightest evidence
of any intention to deceive Stamm or to practice a fraud upon
him, he negotiated with him on a pure business basis.   Each
dealt with the other at arm's length, the prospective seller try-
ing to obtain the best possible price paid for his land, and the
option was given only after the prospective buyer had agreed
to give all that was asked for it.   There is nothing to show that
the price agreed to be paid was not full and adequate at the time
the option was given.   And now, for no other conceivable rea-
son than that the value of his land has greatly increased, the
defendant would avoid performance of a contract in which there
is involved nothing dishonest in law or in morals.   Before the
option was exercised the appellee heard that the manufactur-
ing company might come to the town, but he made no objec-
tion on that account when Anderson notified him that he would
exercise it.   Such exercise turned it into a contract, enforce-
able by either party, whether the company came or not, and, if
it had not come, Anderson would have had to pay the purchase
money, though the same might have been much more than the
property was worth and than anybody else would have paid for
it.   What Anderson is alleged to have concealed was nothing
more than a rumor which might have been true or false.   He
concealed no fact then in existence that had actually affected
the real market value of the property.   But, even if he had,
and the concealment under what took place between him and
the prospective vendor had not amounted to actual deception,
no fraud would have been practiced.

The complaint of the appellee is, that Anderson did not
speak when it was his duty to speak.   " A concealment to be
material must be the concealment of something that the party
concealing was under some legal or equitable obligation to dis-
close : " Kerr on Fraud (Am. ed.), 95.   " Concealment which
amounts to fraud in the sense of a court of equity, and for which
it will grant relief, is the nondisclosure of those facts and cir-
cumstances which one party is under some legal or equitable
obligation to communicate, and which the other party has a
right, not merely in foro conscientiæ, but juris et de jure, to
know."   In Neill v. Shamburg, 158 Pa. 263, the plaintiff sought
to set aside her sale of an oil lease, alleging as one of her rea-
sons concealment by the purchaser at the time of the purchase

of the fact that oil was being produced upon a neighboring leasehold owned by him, and we held that the failure of the purchaser to make such disclosure was not a fraud upon her. If the information had been imparted to her, she might have refused to sell, or demanded more, but it was said by the present chief justice: "Unless there is some exceptional circumstance to put on him the duty of speaking, it is the right of every man to keep his business to himself." There was no exceptional circumstance here requiring Anderson to repeat to Stamm the rumor of the probability of the location of the manufacturing company in their town. On the contrary, common business prudence required him to remain silent, for, if he had spoken of the rumor, he might not have been able to negotiate at all. On this very point the learned trial judge says: "Had Mr. Anderson frankly confided to Mr. Stamm the information and knowledge he had, and which was entirely proper that he should have done, it is scarcely possible this option would have been given."

If Anderson had been asked to speak on a material matter, and had answered falsely, Stamm would not be bound by the option nor the contract that flowed from it; and, if he had refused to speak when asked, Stamm would have dealt with him at his own risk. But such is not the situation. Harris v. Tyson, 24 Pa. 347, was a case in which the vendee did not disclose to his ignorant vendor the fact known by him, that there was a mine of chrome on the land he wished to purchase. The vendor subsequently would have avoided his deed for the reason that the vendee had not informed him of the presence of the chrome on the property at the time he sold it, and BLACK, J., said: "A person who knows that there is a mine on the land of another may nevertheless buy it. The ignorance of the vendor is not of itself fraud on the part of the purchaser. A purchaser is not bound by our laws to make the man he buys from as wise as himself. The mere fact, therefore, that Tyson knew there was sand chrome on Harris's land, and that Harris himself was ignorant of it, even if that were conclusively established, would not be ground for impugning the validity of the deed."

In Guaranty Safe Deposit and Trust Co. v. Liebold, ante, p. 399, we said what we repeat as applicable to the facts here:

" In this commercial age options are daily procured by those in possession of information, from which they expect to profit simply because those from whom the options are sought are ignorant of it. When the prospective seller knows as much as the prospective buyer, options can rarely, if ever, be procured. . . . The prospective buyer seeks an option instead of at once entering into a contract for the purchase of land, because, no matter what information he may possess exclusively, he is unwilling to act upon it until it becomes a certainty. In the meantime, on the contingency of its becoming so, he makes his contingent bargain to purchase. This is fair in law and in morals: Hershey v. Keembortz, 6 Pa. 128; Harris v. Tyson, 24 Pa., 347."

The reason given for dismissing plaintiffs' bill and refusing a decree for specific performance is untenable and cannot be sanctioned in this practical age. The decree of the court below is reversed, and it is now ordered, adjudged and decreed that the bill be reinstated and that, upon the tender of $8,000 of the purchase money by J. F. Anderson to the appellee, and the execution and delivery by him of the mortgage to secure the three annual payments of $2,000 each—balance of the purchase money—the appellee, J. George Stamm, execute and deliver to him, the said J. F. Anderson, a deed for the land described in the bill, the costs on this appeal and below to be paid by the appellee.