Warner Company *v.* MacMullen, Appellant.

Argued January 5, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Paul I. Guest,* with him *Achey & Power,* for appellants.

*George T. Kelton,* with him *Eastburn, Begley & Fullam,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, March 14, 1955:

This is an appeal by defendants from a decree of the court below granting plaintiff specific performance of an agreement for the sale of real estate.

Hugh B. Eastburn, Esq., representing plaintiff Warner Company, desired to purchase for it a certain tract of approximately 21 acres of land in the Bor-

ough of Tullytown, Bucks County. Having learned that defendants, G. Stewart MacMullen and Adelaide S. MacMullen, were the owners of the property, he visited MacMullen and entered into negotiations with him for the purchase of the property. During the course of their conversations he made it clear that he was acting as agent for the prospective purchaser; he spoke throughout of *"his client."* They finally arrived at an understanding in pursuance of which a written agreement was entered into on December 6, 1950, wherein Eastburn, Agent for defendants, agreed to sell the property to one George B. Ermentrout. Eastburn stated that Ermentrout was a straw party but he declined to reveal the identity of the real purchaser. The agreement was signed by Eastburn, Agent, and by Ermentrout, and was approved by defendants over their signatures. The purchase price was $15,000, of which $1,000 was paid on account. The agreement provided for settlement to be made within 90 days, said time to be of essence of the agreement. "Formal tender of deed and tender of moneys" were waived. Defendants agreed to have a new survey and plans made by one William S. Erwin at their expense, and to pay Eastburn, Agent, a commission of 5% on the sale price. The day after the agreement was executed Ermentrout assigned his right, title and interest therein to plaintiff Warner Company.

On March 1, 1951, John P. Fullam, Esq., an associate of Eastburn, arranged with MacMullen for settlement at his law office in Bristol on the evening of March 6, 1951, which was the 90th day after the execution of the agreement. At the time thus fixed a telephone conversation was had between MacMullen and Fullam but what was said by each of them on that occasion is the subject of controversy. Fullam's version is that MacMullen stated that he could not come

that evening and suggested that settlement be effected instead by Fullam mailing him the deed for execution and paying him the purchase money on delivery of the deed, to which proposal Fullam agreed; accordingly the following day Fullam did mail him the deed, together with the title company's settlement sheets for his approval. MacMullen, on the other hand, testified that the reason why he refused to meet for settlement on the evening of March 6th was because Fullam told him that a check for the purchase money would not be delivered to him until after the deed for the property had been recorded by the title company; he did admit, however, that it was arranged between them that Fullam should mail him the deed for signature although he understood that a certified check would be sent with the deed. Be all that as it may, what happened was that on or about the 8th or 9th of March, Seymour L. Green, Esq., acting as attorney for defendants, telephoned Fullam that there was an error in the survey which Erwin had prepared and in the description in the deed in that the agreement of sale had provided that there should be reserved to defendants a certain small triangular piece of the tract but due to one of the lines of the survey being misplaced the reserved portion as described in the deed was slightly less in acreage than it should have been. Thereupon Fullam and Green agreed that a corrected survey should be prepared, the description in the deed modified in accordance therewith, and the corrected deed sent to Green for execution by defendants. Accordingly, Fullam ordered a new survey from Erwin which was received in about two or three weeks; he then prepared a new deed with the amended description and, on March 23rd, mailed the deed and a copy of the revised survey to Green. As previously stated, it was defendants' obligation, expressly assumed by

them in the agreement of sale, to furnish the survey; therefore the correction of any error therein was legally their responsibility, not that of plaintiff. Until the new deed was sent to Green no objections whatever had been made nor any questions raised, either by defendants or their attorney, except as to the incorrect survey, but in April their attorney began making critical reference to Eastburn's agency for both parties and his refusal to reveal the identity of Ermentrout's undisclosed principal. This culminated in a letter from Green to Eastburn on May 1st which stated that "it is the desire of Mr. and Mrs. MacMullen to cancel the . . . agreement. Their reason being that the person to whom they sold, Mr. Ermentrout, was a straw party. The real buyer here was an undisclosed principal, namely the Warner Company. You knew this at the time Mr. and Mrs. MacMullen signed the Agreement of Sale, but you failed to disclose this matter to them. In fact when you approached them in regards to selling the property for them, you actually represented the Warner Company and had a commitment from them to buy it. Under the circumstances there is no duty on the part of Mr. and Mrs. MacMullen to go through with the sale. Nor to pay you a commission on the sale." The letter enclosed a check returning the $1,000 deposit money, although subsequently defendants stopped payment on this check.

In the present action brought by plaintiff to obtain specific performance of the contract, defendants have interposed several alleged grounds of defense. One of their contentions is that they had the right to "cancel" the agreement because of Eastburn's having acted in the transaction as agent both for them and for the plaintiff. But as the testimony clearly disclosed, and as the chancellor found as a fact, Eastburn,

from the very beginning of the negotiations, informed them that he was representing a client who wished to purchase their property. The rule that an agent cannot act for both parties to a transaction has no application where such double representation was known to the parties and not objected to by them at or previous to the time when they executed their agreement: *Goldsmith v. Stocker,* 253 Pa. 127, 130, 97 A. 1079, 1080; *Sarshik v. Fink,* 292 Pa. 256, 261, 141 A. 39, 40; *Rossi v. Firemen's Insurance Company,* 310 Pa. 242, 249, 165 A. 16, 18; *Girts v. Shaw,* 70 Pa. Superior Ct. 345.

Defendants object that Eastburn refused to reveal the identity of the real purchaser whom he represented, but that is not a valid defense to an action for specific performance: *Lenman v. Jones,* 222 U. S. 51; *Standard Steel Car Co. v. Stamm,* 207 Pa. 419, 56 A. 954. Even had he failed to disclose that Ermentrout was in fact a straw party and that there was an undisclosed principal, this too would not have constituted a defense: 49 Am. Jur. 67, §53. Indeed MacMullen frankly admitted that whether the conveyance was to be made to Warner Company or anybody else did not make "the least bit" of difference to him.

Defendants complain that the title company, according to whose settlement sheets plaintiff proposed to settle, deducted from the amount of the purchase money the sum of $750 representing the commission payable to Eastburn. That payment, however, being a term of the agreement, could be enforced by plaintiff as well as by Eastburn himself. Moreover, the testimony indicated that the purchase money would have been paid to defendants without deduction of that item had they so insisted. Plaintiff had the full amount on deposit with the title company, but the refusal of

defendants to perform made any tender on the part of plaintiff unnecessary.

Defendants' final contention is that, since the time fixed for settlement was made the essence of the agreement and plaintiff did not perform within the 90 days stipulated in the agreement, they were excused from their obligation to deliver a deed. This attempted defense, as well as the immediately preceding one, might well be rejected on the ground that in the letter from defendants' attorney of May 1, 1951, "cancelling" the agreement, the sole reasons asserted as the justification for such action were that the identity of the real purchaser had not been disclosed by Eastburn and that he had acted as agent for both parties. It is a firmly established principle, founded on the doctrine of equitable estoppel, that a refusal to perform the obligations of a contract on the ground of a specific breach assigned as the reason for such refusal, constitutes a waiver of all other breaches then known to him;[1] where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his mind, to the detriment and disadvantage of the other party, and seek to justify his action by advancing some other reason. However, even if consideration be given to defendants' contention that settlement

---

[1] *R. W. McCormick & Son v. Royal Insurance Company*, 163 Pa. 184, 192-194, 29 A. 747, 749, 750; *Honesdale Ice Company v. Lake Lodore Improvement Company*, 232 Pa. 293, 300, 301, 81 A. 306, 308; *Haney v. Hatfield*, 241 Pa. 413, 416, 88 A. 680, 681, 682; *Bulliet, Trustee v. Allegheny Trust Company*, 284 Pa. 561, 566, 131 A. 471, 473; *Camp v. Corn Exchange National Bank*, 285 Pa. 337, 347, 348, 132 A. 189, 192, 193; *Railway Company v. McCarthy*, 96 U. S. 258, 267, 268; *Second National Bank of Allegheny v. Lash Corporation*, 299 F. 371, 372; *Newspaper Readers Service, Inc. v. Canonsburg Pottery Company*, 176 F. 2d 945, 949.

was not made within the 90 days, there is here applicable the principle that even though the time fixed in an agreement for settlement is stated to be of the essence of the agreement, it may be extended by oral agreement or be waived by the conduct of the parties, and where the parties treat the agreement as in force after the expiration of the time specified for settlement it becomes indefinite as to time and neither can terminate it without reasonable notice to the other: *Hopp v. Bergdoll,* 285 Pa. 112, 131 A. 698; *Cohn v. Weiss,* 356 Pa. 78, 81-84, 51 A. 2d 740, 742, 743; *DiGiuseppe v. DiGiuseppe,* 373 Pa. 556, 559, 96 A. 2d 874, 875. Irrespective of who was to blame for the failure of the parties to make settlement on the evening of March 6th, the fact is that they then arranged that the transaction was to be consummated later by correspondence, and when it subsequently appeared that the description of the property in the survey and the deed was incorrect they agreed that a new survey should be made and a new deed prepared. They thereby waived the time limit fixed in the agreement, and when, finally, defendants, through their attorney, announced their refusal to perform, they placed that refusal only upon the specific grounds set forth in the attorney's letter and not on any asserted failure of plaintiff to pay or tender the purchase money on the evening of March 6th. Defendants cite the cases of *Doughty v. Cooney,* 266 Pa. 337, 109 A. 619, and *Levy's Estate,* 273 Pa. 148, 116 A. 666, as authority for the proposition that, where a vendee of land relies upon a waiver of the time limit made the essence of the contract, he must aver such waiver in his bill for specific performance. Plaintiffs' bill did set forth the arrangements made by MacMullen and Fullam on the evening of March 6th for settlement thereafter, and which, together with the subsequent conduct of the

parties, clearly show that the parties waived the time limit prescribed in the agreement.

Decree affirmed at the cost of defendants.

