Arden L. Moyer and Moyer Realty and Insurance Company, Inc. *v.* State Real Estate Commission.
Cloyd E. Brenneman *v.* State Real Estate Commission.

Argued March 9, 1971, before Judges KRAMER, WILKINSON, JR., and ROGERS, sitting as a panel of three.

*David Goodwin,* with him *Fruit, Dill & Goodwin,* for Moyer and Moyer Realty and Insurance Company, Inc., appellants.

*Chester B. Scholl,* for Brenneman, appellant.

*Steven Kachmar,* Assistant Attorney General, for appellee.

OPINION BY JUDGE ROGERS, April 13, 1971:

These are appeals from an adjudication and order of the State Real Estate Commission suspending for 90 days the broker's licenses of Arden L. Moyer, Moyer Realty and Insurance Company, Inc. and Cloyd E. Brenneman. The actions of the Commission in the cases of the three licenses grew out of the same set of circumstances and there was but one hearing and one adjudication. We will, therefore, dispose of the three appeals together.

Arden L. Moyer has held a license as a real estate broker since 1952 and his corporation, Moyer Realty and Insurance, Inc., has held a broker's license since 1954. The broker's license of Cloyd E. Brenneman, an

employe of Moyer, dates from March 10, 1969. Moyer and Brenneman are persons of good reputation as specifically found by the Commission.

The genesis of appellants' troubles was a meeting of leading citizens of Mercer County, Pennsylvania, held in the Court House in January or February of 1969. The purpose of the meeting was to hear a report of the Planning Commission of Mercer County, of which Moyer was chairman, on the subject of the location of a regional jail in Mercer County. Representatives of the State Bureau of Correction were present and after the meeting a motor vehicle caravan was formed to enable these persons to inspect suggested sites. They expressed a preference for a location in Cool Spring Township but protests from the people of Cool Spring Township were such as to prevent the establishment of the jail there. Hindsight has instructed Arden L. Moyer that it would have been well at this point to concern himself no further with the regional jail. However, he called on the General State Authority, obtained the State's requirements, made a further investigation of possible sites in Mercer County, and reported back to the Bureau of Correction. Mr. Arthur T. Prasse, Commissioner of the Bureau of Correction of the Department of Justice, accompanied by his Administrative Assistant and is Director of Engineering, came to Mercer County and Mr. Moyer took them to several places which he thought would meet their requirements. These officers decided on a site in Findley Township and told Moyer to "put it together." The State, however, declined to pay Moyer for his services suggesting that he look for compensation to the owners of the land the State would purchase through his agency. Thereupon, Moyer and Brenneman called on landowners and solicited written agreements listing their properties for sale. The complaints against the appellants which re-

sulted in the suspensions here appealed from were made by persons approached by Moyer and Brenneman. The complainants, when they made these charges, were members of or sympathizers with a movement to keep the jail out of Findley Township.

The citation upon which these proceedings are based charges appellants with the following conduct allegedly violative of the Real Estate Brokers' License Act of 1929, May 1, P. L. 1216, 63 P.S. 431: "1. Over a period of time from May 1, 1969, to May 23, 1969, call at the homes of the complainants above-named and others, and represent yourselves as working for the Commonwealth of Pennsylvania in securing for its purpose lands upon which to locate a regional jail; 2. State that the complainants had to deal with you and each of you or the lands owned by them respectively would be condemned by the Commonwealth; 3. Insofar as complainants James L. and Inez Beard are concerned, threaten that they would be bodily ejected from their property if they did not sign a listing agreement for you and each of you." These actions are stated by the Citation to constitute violations of clauses (1), (2) and (7) of Subsection 10(a)[1] of the Real Estate Brokers' License Act, *supra,* as follows: "(1) Of knowingly making any substantial misrepresentation; or (2) Of knowingly making any false promise of a character likely to influence, persuade or induce; or (7) Of any act or conduct in connection with a real estate transaction which demonstrates incompetency, bad faith, or dishonesty."

After a lengthy hearing the Commission made the following relevant findings of fact: "8. Brenneman informed the Timblins that he represented the 'State' and that 'they' were acquiring options for land for the State Authority. 9. Brenneman informed the Timblins

---

[1] 63 P.S. 440(a), (1), (2) and (7).

that the 'State' would be around to condemn their property if they did not sign up with him and that they would be lucky if they got out of their property what they paid for it. . . . 15. On or about May 23, 1969, Moyer and Brenneman advised complainants Andrew Bochy and Bessie, his wife, that a regional jail was coming in the vicinity of the area where they lived and that they were 'acquisitioning' land for the State for that purpose. 16. The Bochys were informed that they had the option of listing their property with the respondents or 'giving them an offer on it' or 'else the State would condemn it.' . . . 18. On or about May 23, 1969, Brenneman called the complainant, James L. Beard, and advised him that his property was needed for a regional jail and that he worked for the State. . . . 21. Mr. Brenneman informed Mr. Beard that if the property wasn't sold through respondents, the property would be condemned."

The Commission concluded on the basis of these findings that "Respondents in their zeal to secure exclusive listing agreements for the sale of properties which may have been considered as a site for a regional jail, acted in bad faith in violation of Section 10(a)(7) of the Real Estate Brokers' License Act." The Commission did not conclude that appellants had violated either clause (1), the offense of knowingly making a substantial misrepresentation or of clause (2), that of knowingly making a false promise of a character likely to influence, persuade or induce.

The Commission's conclusion that the appellants made no substantial misrepresentations and no inducing false promise was clearly correct. Indeed, the appellants approached the complainants with notable candor. They properly identified themselves, fully disclosed the reason why they wished to have a listing and advised the owners that they would be responsible for

a commission. The complainants find fault only with appellants' alleged statements that they represented or were employed by the State and that if the owners did not sell the State would condemn. In truth the appellants, while not employes of the State, were encouraged by persons at the highest level of officialdom to assemble a site in Findley Township. It was to appellants' credit rather than their discredit that they fully disclosed their buyer and its purpose in acquiring these properties. In this appellants displayed morals of a standard superior to that demanded by the law. *Miller v. Fulmer,* 25 Pa. Sup. 106 (1904) ; *Standard Steel Car Company v. Stamm,* 207 Pa. 419, 56 A. 954 (1904). Moreover, the Commission properly concluded that appellants' references to the power of the State to appropriate properties was neither a substantial misrepresentation nor a false inducement. Competent State officers had told Moyer that the Findley Township site was the one desired. It was no untruth to tell landowners that the alternative to selling to the State was condemnation nor was the suggestion that the landowner would be better served by selling to the State at his own price than by suffering condemnation a falsehood. Further, none of the complainants were in any way injured. Of the three owners involved, one asked for and obtained a return of the listing agreement, a second never executed one, and the third did not sell.

Although the Commission could not conclude that the appellants lied or made false promises, it did conclude that the appellants were guilty of bad faith. This decision was apparently based on the Commission's opinion that the respondents were, to use its word, "overzealous." The adjudication, however, does not tell us what actions of the appellants were overzealous. Assuming that bad faith, as used in the Real Estate Brokers' License Act, *supra,* has an existence separate and

apart from the many other acts proscribed by Section 10, it connotes more than mere zeal. *Pennsylvania Real Estate Commission v. Harris,* 10 D. & C. 2d 209 (1957), affirmed per curiam, 184 Pa. Sup. 667, 136 A. 2d 849. It describes conduct of a dishonest nature. *Davis, Trustee v. Pennsylvania Company,* 337 Pa. 456, 12 A. 2d 66 (1940). It does not include honest dealings pursued in a fashion which may offend the sensibilities of the Commission.

We are mindful of the limitations the law imposes upon our review of the Commission's findings. See *Pennsylvania State Board v. Schireson,* 360 Pa. 129, 61 A. 2d 343 (1948); *Pennsylvania Real Estate Commission v. Harris, supra.* Indeed, we find substantial evidence in this record to support the Commission's findings of fact. However, the Commission's only operative conclusion, viz., that appellants were guilty of bad faith in that they were overzealous, was not in accordance with law. As such, it requires our sustaining the appeals. Administrative Agency Law, 1945, June 4, P. L. 1388, Sec. 44, 71 P.S. 1710.44.

The Commission's order manifests an irresolution doubtless founded in its inability to find a punishment to fit the offense it devised for the occasion. It suspended the appellants' licenses for 90 days but stayed the execution of the suspensions. There is no warrant in the Real Estate Brokers' License Act for such an order. The purpose of the act is to protect the public against harmful conduct described in the Act, not to provide the Commission a means for censure of actions distasteful to the Commission. *Young v. Department of Public Instruction,* 105 Pa. Sup. 153, 160 A. 151 (1932).

## ORDER

AND Now, April 13, 1971, the appeals of Arden L. Moyer and Moyer Realty and Insurance, Inc. to 162

522

Commonwealth Docket 1970, 793 Transfer Docket 1970, and the appeal of Cloyd E. Brenneman to No. 163 Commonwealth Docket 1970, 794 Transfer Docket 1970, from the adjudication and order of the State Real Estate Commission, made February 18, 1970, are, and each of them is, sustained and said adjudication and order is set aside.