236

In the Matter of the Suspension or Revocation of Real Estate License No. R.B.-001518-A etc.

George W. Jones, III, Individually and t/d/b/a Real Realty Company, Petitioner v. Commonwealth of Pennsylvania, State Real Estate Commission, Respondent.

Chester C. Reefer, Petitioner v. Commonwealth of Pennsylvania, State Real Estate Commission, Respondent.

Argued June 8, 1979, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*John B. Nicklas, Jr.,* with him *McCrady, Nicklas & McCrady,* for petitioner, G. W. Jones, III.

*Henry M. Horvat,* for petitioner, Chester C. Reefer.

*Kenneth E. Brody,* Assistant Attorney General, with him *Gerald Gornish,* Acting Attorney General, for respondent.

OPINION BY JUDGE MENCER, November 8, 1979:

On May 2, 1978, the State Real Estate Commission (Commission) revoked the real estate broker's licenses of G. W. Jones (Jones) and Real Realty Company (Real) and the real estate salesman's license of Chester C. Reefer (Reefer) employed by Real, for violating Section 10(a)(1) and (7) of the Real Estate Brokers License Act of 1929 (Act), Act of May 1, 1929, P.L. 1216, *as amended,* 63 P.S. §440(a)(1), (7).[1] The license holders have appealed to this Court, and their appeals have been consolidated for argument and disposition. We affirm the Commission's findings of fact but modify the penalties imposed.

The facts as found by the Commission can be briefly stated. Pursuant to a complaint filed by Mr. and Mrs. Harry Blackwell, the Commission investigated the sale of a house at 506 West Burgess Street in Pittsburgh. Mrs. Beverly Gilmore, the owner, engaged Real to find a purchaser for her vacant residence. In May 1976, Reefer negotiated a sales agreement for the property with the Blackwells, and settlement was scheduled for August 17, 1976. Three weeks prior to

---

[1] Section 10(a)(1) and (7) reads as follows:

(a) The commission may, upon its own motion, and shall, promptly, upon the verified complaint in writing of any person setting forth specifically the wrongful act or acts complained of, investigate any action or business transaction of any licensed real estate broker or real estate salesman; and shall have the power temporarily to suspend or permanently to revoke licenses theretofore issued by the department, under the provisions of this act, at any time when, after due proceedings as hereinafter provided, it shall find the holder thereof to have been guilty,

(1) Of knowingly making any substantial misrepresentation; or

. . . .

(7) Of any act or conduct in connection with a real estate transaction which demonstrates incompetency, bad faith, or dishonesty. . . .

closing, Mr. Blackwell, accompanied by Reefer, inspected the property and found it to be in satisfactory condition. On August 16, 1976, Mr. Blackwell contacted Jones and Reefer to procure the key to the house and arrange for a presettlement inspection. Both failed to make arrangements for Mr. Blackwell to obtain the key so that he might conduct a presettlement inspection.

Closing took place as scheduled, but the purchase money remained in escrow pending the results of a termite inspection and a survey. The termite inspection was conducted subsequent to the closing on the afternoon of August 17, 1976. At that time, Reefer, who was present during the inspection, noticed that a pipe in the basement was cut and that a panel on the door from the kitchen to the basement was broken so that the door could not be securely locked. That evening, Mrs. Gilmore called Reefer and hysterically informed him that the basement of the home had been extensively vandalized.[2] Reefer, after calming Mrs. Gilmore, called Jones and informed him of the developments. No further action was taken by Reefer with respect to the property or to contacting the Blackwells.

On August 18, 1976, without inspecting the property or calling the Blackwells, Jones obtained the release of the purchase money, the termite inspection and survey having been completed, and delivered the proceeds to Mrs. Gilmore. The Blackwells discovered the damage to the home upon taking possession of it that evening.

Based on these findings, the Commission adjudged Jones, Real, and Reefer guilty of a substantial misrepresentation for failing to disclose the damage to the

---

[2] The Commission found that "the kitchen door leading to the basement was broken, the basement pipes were missing, the basement window was open, the fixtures on the furnace and under the sink were missing and the hot water tank was destroyed."

Blackwells and of bad faith for failing to provide Mr. Blackwell a further opportunity to inspect the property contemporaneous to settlement and for not informing him of the damage. In addition, the Commission found Jones and Reefer guilty of bad faith in the matter of submitting the documents for the purchase money without notifying the Blackwells of the vandalism.

All petitioners argue that the Commission's findings are not supported by substantial evidence. This argument is without merit, as the findings accurately reflect the testimony of Mr. Blackwell and portions of Jones' and Reefer's own testimony. Petitioners' chief complaint is that the Commission refused to find credible those portions of Jones' and Reefer's testimony which conflicted with Mr. Blackwell's. It is axiomatic, however, that questions of credibility, the resolution of conflicting testimony, and the weight to be given to the evidence are for the Commission, not this Court. *See Mishkin v. State Real Estate Commission,* 27 Pa. Commonwealth Ct. 17, 365 A.2d 704 (1976); *Benford v. Real Estate Commission,* 8 Pa. Commonwealth Ct. 89, 300 A.2d 922 (1973); *State Real Estate Commission v. Harris,* 184 Pa. Superior Ct. 667, 136 A.2d 849 (1957).

Jones argues, however, that the Commission's finding that Reefer had called him and informed him of the damage cannot stand because it is based solely upon Reefer's self-serving testimony and it is the only material portion of his testimony that the Commission found credible. A factfinder may, however, "in lawful exercise of his broad discretion, accept or reject the testimony of any witness *in whole or in part.*" *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 595, 377 A.2d 1007, 1010 (1977) (emphasis in original). In addition, although the testimony of an accomplice, absent corroboration, is to be strictly scruti-

nized, *see Commonwealth v. Banks,* 454 Pa. 401, 311 A.2d 576 (1973), such testimony, if found credible, can by itself support a factfinder's determination. *See Commonwealth v. Tervalon,* 463 Pa. 581, 345 A.2d 671 (1975); *Commonwealth v. Bradley,* 449 Pa. 19, 295 A.2d 842 (1972). Thus, the Commission could accept that aspect of Reefer's testimony implicating Jones, while rejecting the balance of his testimony.

Petitioners next argue that, even if the Commission's findings of fact are supported by substantial evidence, those findings do not support the Commission's conclusions of law. We agree that the Commission erred in finding that petitioners knowingly made a substantial misrepresentation by failing to disclose the vandalism to the Blackwells. *See* Restatement (Second) of Torts §551 (1977).[3] We do not mean to suggest, however, that real estate brokers and salesmen owe no duty of candor towards buyers and other

---

[3] Section 551 reads as follows:

§551. Liability for Nondisclosure

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

third parties outside of the normal seller/broker relationship. On the contrary, real estate brokers and salesmen may be held accountable in damages by third party purchasers for misrepresentation including the failure to disclose material information. *See Shane v. Hoffmann,* 277 Pa. Superior Ct. 176, 324 A.2d 532 (1974); *cf. Young v. Department of Public Instruction,* 105 Pa. Superior Ct. 153, 157, 160 A. 151, 153 (1932) (under the Act, a broker's responsibility "for knowingly making any substantial misrepresentations is the same whether they be made to his principal or to any other person, if they are made in an attempt to effect a purchase or sale of real estate for another person."). Here, however, without the presence in the record of the sales agreement or other evidence of the contractual relationship between the parties, we are unable to determine whether petitioners' failure to disclose the damage *induced* the Blackwells to act or refrain from acting.

We do agree with the Commission, however, that petitioners' failure to inform the Blackwells of the condition of the house does constitute bad faith, especially given the ease of notifying the Blackwells and petitioners' haste to obtain the release of the purchase money. We recognize that this is a close case, but in light of the real estate profession's impact on society, high standards of competency and fair play should be maintained.

---

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Petitioners next argue that since the Blackwells, as equitable owners, were responsible for any damage to the house, petitioners' failure to reveal the damage did not prejudice the Blackwells. Thus, even if the Blackwells had been aware of the damage, they could not have avoided the sale without a breach of contract. Therefore, petitioners should not be penalized for harmless acts.

While it is generally true that equitable conversion places the risk of loss during the executory period of the sales agreement upon the buyer, *see Byrne v. Kanig,* 231 Pa. Superior Ct. 531, 332 A.2d 472 (1975); *Rappaport v. Savitz,* 208 Pa. Superior Ct. 175, 220 A.2d 401 (1966), the parties can provide otherwise by contract. *See, e.g., DiDonato v. Reliance Standard Life Insurance Co.,* 433 Pa. 221, 249 A.2d 327 (1969). Since the sales agreement between the parties was not introduced into evidence, we are unable to determine whether equitable conversion applies and therefore whether petitioners' conduct was harmless. Moreover, even if equitable conversion applied, petitioners are still subject to discipline because the purpose of the Act is to protect *the public* against reprehensible conduct on the part of real estate brokers and salesmen. *See Moyer v. State Real Estate Commission,* 1 Pa. Commonwealth Ct. 515, 276 A.2d 327 (1971); *State Real Estate Commision v. Fenstersheib,* 89 Dauph. 306 (Pa. C.P. 1968). Therefore, even if none of the parties to the transaction were harmed, in order to prevent the repetition of similar acts in the future, the Commission is empowered to pursue disciplinary proceedings. *Cf. Fenstersheib, supra* (the Commission may still discipline a real estate broker even if the complainants would have withdrawn the complaint initiating the proceedings upon restitution by the broker).

Reefer raises two additional arguments on his own behalf. He first alleges the Commission was biased,

as evidenced by its active role in cross-examination. We have reviewed the record and find no basis for this argument. The purpose of the Commission's questioning was merely to obtain all the facts necessary for a fair adjudication. While the Commission might have expressed skepticism at the answers it received, such expression did not amount to a denial of due process. *See Cherbel Realty Corp. v. Zoning Hearing Board,* 4 Pa. Commonwealth Ct. 137, 285 A.2d 905 (1972).

Reefer next contends that he was denied due process because he was not allowed to file a brief prior to the adjudication. Such a right is both statutorily and constitutionally required. *See* Administrative Agency Law, 2 Pa. C.S. §506; *Bengal & Youngwood Pharmacy v. State Board of Pharmacy,* 2 Pa. Commonwealth Ct. 347, 279 A.2d 374 (1971). Here, petitioners were specifically informed of their right to file a brief within six weeks of the filing of the transcript, but no petitioner requested, on the record, to be informed of the transcript's filing. Thus, we fail to see how *the Commission* denied Reefer the right to file a brief. *See Feddish v. State Board of Chiropractic Examiners,* 13 Pa. Commonwealth Ct. 43, 317 A.2d 899 (1974); *Sharp's Convalescent Home v. Department of Public Welfare,* 7 Pa. Commonwealth Ct. 623, 300 A.2d 909 (1973).

Jones argues on his own behalf that the Commission erred in not granting his motion to dismiss its complaint against him at the close of the Commission's case, on the ground that insufficient evidence had been presented to sustain the charges. Our research fails to disclose whether such a motion, which is akin to a compulsory nonsuit in civil practice and a demurrer to the evidence in criminal practice, is proper in administrative proceedings. We need not decide the issue, however, for it is well settled that no appeal lies from the refusal of a court to grant a compulsory nonsuit

or a demurrer to the evidence when the defendant proceeds to present his case, as did Jones in the instant matter. *See Commonwealth v. Ilgenfritz,* 466 Pa. 345, 353 A.2d 387 (1976); *Muchow v. Schaffner,* 180 Pa. Superior Ct. 413, 119 A.2d 568 (1956).

Finally, it is argued that the Commission abused its discretion by revoking petitioners' licenses. We agree. In view of our finding of no misrepresentation, we will modify the Commission's order to provide a six-month suspension for all petitioners. *See Mishkin, supra; Benford, supra.*

ORDER

AND Now, this 8th day of November, 1979, the order of the State Real Estate Commission, dated May 2, 1978, revoking the licenses of G. W. Jones, Chester C. Reefer, and Real Realty Company is modified, said licenses to be suspended for six months, to begin on a date fixed by the Pennsylvania State Real Estate Commission, with credit for time during which licenses have been revoked. As so modified, the adjudication of the Commission is affirmed.