J-A04016-24

2024 PA Super 119

CM GOAT, LLC

v.

BERNARDO VALDEZ

Appellant

: IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
:
:
:
:
:
:
:
: No. 3176 EDA 2022

Appeal from the Judgment Entered January 27, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  181003124

BEFORE:   STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

OPINION BY McLAUGHLIN, J.:                    **FILED JUNE 7, 2024**

Bernardo Valdez appeals from the order entering judgment in favor of

CM Goat, LLC ("CM Goat"). We affirm.

The trial court summarized the facts as follows:

> Shortly before June 30, 2018, Mohamed Mirzai, owner of CM
> GOAT, LLC[1] . . . discussed purchasing [commercial]
> property located at 3500 N. 6th Street, Philadelphia, PA
> 19140 (hereinafter, "the Property") with the owner,
> Bernardo Valdez . . . . On June 30, 2018, [Valdez] and
> [Mirzai] met at the office of Angela Vinas (hereinafter, "the
> Realtor"). At this meeting, the Realtor drafted an Agreement
> of Sale to transfer the Property from [Valdez] to [CM Goat]
> (hereinafter, "the Agreement"). At trial, the Realtor testified
> that she went through each provision of the Agreement with
> the parties in both Spanish and English. According to the
> Realtor, when the Agreement was drafted, [Valdez] stated
> he did not require a deposit from [Mirzai] because he had

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court refers to CM Goat and Mirzai interchangeably throughout the
factual background.

known him for a long time, [Mirzai] was a businessman, and [Valdez] was sure the contract would go through. [Mirzai] signed the Agreement at the June 30, 2018 meeting, but [Valdez] took the Agreement home to discuss with his family without signing it. [Valdez] testified that he relies on family members to translate English to Spanish for him.

A subsequent meeting to finalize the Agreement was scheduled at the Realtor's office for July 5, 2018. At trial, the Realtor testified that [Valdez] requested a provision stating that written acceptance of all parties will be on July 5, 2018. On the morning of July 5, 2018, [Valdez] contacted the Realtor to reschedule the meeting for July 6, 2018. [Mirzai, Valdez, Valdez's] daughter, and the Realtor were in attendance at the meeting on July 6, 2018. [Valdez] signed the Agreement and initialed each page of the Agreement in the presence of [his] daughter, [Mirzai], and the Realtor. No changes were made to the contract between June 30, 2018 and July 6, 2018. [Valdez] testified that he intended to sell the Property to [Mirzai] when he signed the Agreement on July 6, 2018. The Agreement set the closing date for July 20, 2018.

On July 20, 2018, [Mirzai], the Realtor, and an agent from a title company appeared at the Realtor's office for the settlement of the sale of the Property. At trial, [Mirzai] testified that he was ready, willing, and able to purchase the Property at this meeting. [Mirzai] also produced the check written to the Title Company that he had prepared prior to the July 20, 2018 meeting in anticipation of the settlement. However, [Valdez] testified that he decided not to go through with the sale about a week after signing the Agreement on July 6, 2018 because [Mirzai] did not pay a deposit of $20,000. [Valdez] further testified that the deposit requirement was agreed upon orally and did not appear in the written Agreement. Ultimately, [Valdez] did not attend the July 20, 2018 closing and stated to the Realtor over the phone that he did not intend to sell the Property.

Trial Court Opinion, filed 3/8/23, at 4-6 (footnotes omitted).

The Agreement contained an arbitration clause that stated:

Buyer and Seller agree to arbitrate any dispute between them that cannot be amicably resolved. After written demand for arbitration by either Buyer or Seller, each party will select a competent and disinterested arbitrator . . . Arbitration will be conducted in accordance with the provisions of Pennsylvania Common Law Arbitration 42 Pa.C.S.A. § 7341 *et seq*.

Agreement at ¶ 25.

CM Goat filed a complaint against Valdez for specific performance, breach of contract, and to compel arbitration. A non-jury trial was held, in which CM Goat only sought specific performance of the contract. The court found that a valid agreement existed between the parties and found in favor of CM Goat. The court ordered that the case should proceed to arbitration pursuant to the arbitration clause in the Agreement. Both parties filed post-trial motions. CM Goat's post-trial motion requested that the court modify its decision to order specific performance of the Agreement and not transfer the case to arbitration. The court granted CM Goat's post-trial motion and ordered that CM Goat was entitled to specific performance of the Agreement for the sale of the Property. It ordered Valdez to convey the Property to CM Goat within 30 days of the date of the order. The court denied Valdez's post-trial motion. This appeal followed.

Valdez raises the following issues:

1. D[id] the [c]ourt commit error and violate the Statute of Fraud[s] by its reliance on Parol[] Evidence to Interpret and Enforce a Real Estate Sales Agreement that appears unenforceable on its face.

2. Did the [c]ourt commit error and abuse its discretion when it changed the Order transferring the case to

Arbitration to an Order for Specific Performance by finding Waiver while allowing [CM Goat's] nonperformance of the Binding Common Law Arbitration clause in that Agreement?

Valdez's Br. at 7 (unpaginated).

Our standard of review in a non-jury trial is well established:

We must determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law. Additionally, findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion.

*Davis ex rel. Davis v. Gov't Employees Ins. Co.*, 775 A.2d 871, 873 (Pa.Super. 2001) (citations omitted). Our scope of review for questions of law is plenary. *Century Indem. Co. v. OneBeacon Ins. Co.*, 173 A.3d 784, 802 (Pa.Super. 2017).

Valdez first maintains that there was no a valid agreement because he signed the Agreement on July 6, 2018, which was one day after the time provided for acceptance in the Agreement. Valdez's Br. at 10 (unpaginated). Valdez argues that signing the Agreement late was a violation of the contract's "time of essence" clause. *Id.* at 16 (unpaginated). He asserts that the court erred by allowing parol evidence to explain his delay in signing the Agreement past the acceptance date and looking outside of the document to interpret the parties' intent. *Id.* at 16, 18 (unpaginated). Valdez contends that his "late signature appears insufficient to create a contract without a [written] modification on the document of the acceptance date," in violation of the

Statute of Frauds. *Id.* at 10, 16 (unpaginated). He argues that by signing the Agreement one day late, he presented a counteroffer to CM Goat, and it was incumbent upon CM Goat to sign something indicating acceptance of Valdez's late signature. *Id.* at 16-17 (unpaginated). Since CM Goat never accepted, Valdez maintains there was no a valid contract.

The interpretation of a contract is a question of law. Our standard of review is therefore *de novo* and our scope of review is plenary. ***Vinculum, Inc. v. Goli Techs., LLC***, 310 A.3d 231, 242 (Pa. 2024). "In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement." ***Humberston v. Chevron U.S.A., Inc.***, 75 A.3d 504, 510 (Pa.Super. 2013) (citation omitted).

Our Supreme Court has described the parol evidence rule as follows:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

***Yocca v. Pittsburgh Steelers Sports, Inc.***, 854 A.2d 425, 436 (Pa. 2004) (citation omitted) (alteration in original).

"The Statute of Frauds instructs that a purported transfer of an ownership interest in real property is not enforceable unless evidenced in

writing and signed by the [party] granting the interest." ***Trowbridge v. McCaigue***, 992 A.2d 199, 201 (Pa.Super. 2010) (citation omitted). The purpose of the Statute of Frauds "is to prevent the possibility of enforcing unfounded, fraudulent claims by requiring that contracts pertaining to interests in real estate be supported by written evidence signed by the party creating the interest." ***Zuk v. Zuk***, 55 A.3d 102, 107 (Pa.Super. 2012) (citation omitted).

A written agreement may be orally modified, even when the contract expressly provides that all modifications must be in writing, if the parties' conduct clearly shows the intent to waive the no-oral-modifications clause. ***ADP, Inc. v. Morrow Motors, Inc.***, 969 A.2d 1244, 1249 (Pa.Super. 2009). As to "time is of the essence" provisions in contracts, our Supreme Court has long stated that they, too, may be waived by the parties' conduct:

> [E]ven though the time fixed in an agreement for settlement is stated to be of the essence of the agreement, **it may be extended by oral agreement or be waived by the conduct of the parties**, and where the parties treat the agreement as in force after the expiration of the time specified for settlement it becomes indefinite as to time and neither can terminate it without reasonable notice to the other.

***Warner Co. v. MacMullen***, 112 A.2d 74, 78 (Pa. 1955) (emphasis added); ***see also Accu-Weather, Inc. v. Prospect Communications, Inc.***, 644 A.2d 1251, 1255 (Pa.Super. 1994) (stating, "even though the time fixed in an agreement is stated to be 'of the essence,' it may be waived by the conduct of the parties").

- 6 -

Here, the trial court found that a valid and enforceable written contract for the sale of real property existed between Valdez and CM Goat because "the Agreement of Sale evidenced the parties' intent to be bound by the Agreement, sufficiently defined all essential terms of the contract, and was signed by both parties[.]" Trial Ct. Op. at 10. It concluded that Valdez breached the contract when he did not appear at settlement and told the Realtor over the phone that he did not intend to sell the Property. *Id.* at 11. While Valdez claimed that he decided not to go through with the sale because CM Goat did not pay a deposit of $20,000, the court found that there was no provision in the Agreement requiring that CM Goat pay a deposit, and the Realtor testified at trial that Valdez told her at the June 30, 2018 meeting that he did not require a deposit from CM Goat. *Id.* The court also noted that Valdez admitted at trial that the deposit requirement was agreed upon orally and did not appear in the written Agreement. *Id.*

The court further found that Valdez waived the time for acceptance provision in the Agreement when he requested to sign the contract one day late. *Id.* at 19. The court noted, "The fact that he 1) requested the provision, 2) requested that the meeting time mentioned in the provision be postponed, 3) then appeared at the meeting and signed the Agreement after the postponement clearly demonstrates that he did not intend for the 'time is of the essence' provision to be effective." *Id.* The court further highlighted that "[t]he fact that [Valdez] did not mention the time for acceptance provision

when he repudiated the Agreement and only raised it when sued also indicates that he waived the provision[.]" ***Id.***

The court further concluded that it properly did not violate the parol evidence rule. ***Id.*** at 21. It emphasized that none of the testimony at trial purported to vary, modify, or reform the terms of the Agreement. Rather, the testimony was offered to demonstrate the intent of the parties and to establish that the Agreement existed. ***Id.*** at 21-22.

The court did not err. The court properly found that a written contract existed, and that Valdez breached the contract. It allowed testimony surrounding the Agreement for the proper purpose of establishing the existence of the Agreement and the parties' intent. None of the testimony modified any of the terms of the Agreement, such as the purchase price of the Property, the description of the Property, or the parties to the Agreement. Nor did the Agreement violate the Statute of Frauds. Moreover, the testimonial evidence confirmed that the parties waived the time is of the essence provision in the Agreement when, at Valdez's request, the parties met and signed the Agreement one day after the date set forth in the Agreement. ***See Warner***, 112 A.2d at 78. Valdez even testified that he intended to sell the Property when he signed the Agreement on July 6. N.T., 10/3/22, at 123-24. Through the parties' conduct, they were proceeding as though the time had been extended and as though the time is of the essence clause did not exist. Accordingly, Valdez is not entitled to relief on this claim.

Valdez next argues that the court abused its discretion when it determined that he waived his right to arbitration. Valdez's Br. at 13 (unpaginated). He maintains that he could not have consented to arbitration under the Agreement while he was contesting the validity of the Agreement. *Id.* Valdez argues that "[h]is position all along has been that there is not a valid agreement, but if there was a binding [a]greement, he is bound by the [a]rbitration clause." *Id.* He therefore argues that the case should have been transferred to arbitration pursuant to the arbitration clause in the Agreement and CM Goat was not entitled to the remedy of specific performance.

Valdez failed to include this issue in his Rule 1925(b) statement. It is therefore waived. *See* Pa.R.A.P. 1925(b)(4)(vii).

Even if this claim were not waived, it is waived by his failure to seek arbitration promptly in the trial court. "It is well-settled that although as a matter of public policy, our courts favor the settlement of disputes by arbitration, . . . the right to enforce an arbitration clause can be waived." *O'Donnell v. Hovnanian Enters., Inc.*, 29 A.3d 1183, 1187 (Pa.Super. 2011) (citation and quotation marks omitted, ellipsis in *O'Donnell*).

> [A] party cannot avail itself of the judicial process and then pursue an alternate route when it receives an adverse judgment. To allow litigants to pursue that course and thereby avoid the waiver doctrine and our rules of court is to advocate judicial inefficiency; this we are unwilling to do.

*DiDonato v. Ski Shawnee, Inc.*, 242 A.3d 312, 319 (Pa.Super. 2020) (citation and quotation marks omitted).

- 9 -

> Among the factors to look at in determining whether a party has accepted the judicial process are whether the party (1) fail[ed] to raise the issue of arbitration promptly, (2) engage[d] in discovery, (3) file[d] pretrial motions which do not raise the issue of arbitration, (4) wait[ed] for adverse rulings on pretrial motions before asserting arbitration, or (5) wait[ed] until the case is ready for trial before asserting arbitration.

**O'Donnell**, 29 A.3d at 1187 (citation and quotation marks omitted, alteration in original).

Here, as the court noted, Valdez did not assert his right to arbitration until trial. He had participated in over three years of litigation, including filing preliminary objections, an answer and new matter, a motion for summary judgment, and a motion *in limine*, none of which sought arbitration. Thus, the court did not abuse its discretion in finding that Valdez waived any right to arbitration.

Further, the court properly ordered the remedy of specific performance. "Specific performance generally is described as the surrender of a thing in itself, because that thing is unique and thus incapable – by its nature – of duplication." **Oliver v. Ball**, 136 A.3d 162, 166 (Pa.Super. 2016). Pennsylvania courts "consistently have determined that specific performance is an appropriate remedy to compel the conveyance of real estate where a seller violates a realty contract and specific enforcement of the contract would not be contrary to justice." **Id.** at 167. This is so because "[a] specific tract of land has long been regarded as unique and impossible of duplication by the use of any amount of money." **Id.** (citation omitted). Since the court properly

- 10 -

found that a binding contract for the sale of real property existed, it did not err in ordering specific performance of the Agreement.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/7/2024