COMMONWEALTH of Pennsylvania, Appellee,

v.

Edward LENHOFF, III, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 16, 2002.
Filed March 28, 2002.

Harry J. Canceimi, Jr., Waynesburg, for appellant.

Marjorie J. Fox, Assistant District Attorney, Waynesburg, for Com.

Before: DEL SOLE, P.J., BOWES and KELLY, JJ.

OPINION BY BOWES, J.:

¶ 1 Edward Lenhoff III appeals from the order granting in part and denying in part his post-sentencing motions. He was sentenced to nine to twenty-three and one-half months' imprisonment after he pled guilty to forgery and unsworn falsifications. We affirm in part, reverse in part, vacate Appellant's guilty plea, and remand.

¶ 2 The criminal complaint indicates the following. Appellant was charged with forgery graded as a second degree felony and unsworn falsifications to authorities graded as a second degree misdemeanor based upon the following events. At approximately 5:00 p.m. on May 28, 2000, Pennsylvania State Troopers Jay D. Allen and James Garlick were dispatched to the True Value Hardware Store in Dry Tavern, Pennsylvania, in response to a report that a suspicious person was trying to buy a firearm. The person, Appellant, was at the store when Trooper Allen arrived.

¶ 3 Trooper Allen interviewed the manager of the store, Mark Pochron, who stated that the suspect had attempted to purchase a handgun earlier that day using the name Lee James Wright. Mr. Pochron refused to sell him the gun because he was not twenty-one years old. Later, Appellant returned to the same store and attempted to purchase a firearm using the name Edward Lenhoff, III. Mr. Pochron decided to call the police.

¶ 4 Next, Trooper Allen approached Appellant and explained that he was accused of attempting to purchase a firearm using two different names. Appellant identified himself as Lee James Wright and gave Trooper Allen a driver's license issued to Mr. Wright.

¶ 5 Trooper Allen then interviewed Jason Rockwell, a store employee who stated the following. Earlier that day, Appellant gave Mr. Rockwell a gun application. Appellant used the name Lee James Wright on the application, signed the application using that name, and showed Mr. Rockwell a driver's license issued to Mr. Wright. Since that license indicated Appellant was not old enough to purchase a gun, the

application was denied. Approximately seven hours later, Appellant returned and completed an application using the name Edward Lenhoff III. Trooper Garlick then told Trooper Allen that he knew Appellant and knew his name to be Edward Lenhoff III.

¶ 6 On April 10, 2001, Appellant pled guilty to one count each of forgery and unsworn falsifications in exchange for a negotiated sentence of nine to twenty-three and one-half months' imprisonment with a concurrent probationary term of the same duration. During the process of ensuring that Appellant's guilty plea was knowing and voluntary, the plea court stated, "I just want to clarify, Mr. Lenhoff, you understand that forgery is a felony of the second degree punishable by a maximum of 10 years incarceration." N.T., 4/10/01, at 14. In response, Appellant stated, "I've gone through the books at the library at the jail, ma'am." *Id.* The court accepted Appellant's guilty plea and sentenced him in accordance with the plea agreement.

¶ 7 Appellant then filed a post-sentence motion. He argued that the forgery count to which he pled guilty actually should be graded a first degree misdemeanor rather than a second degree felony. In the motion, Appellant also asked the court to allow further plea negotiations and an "amended" agreement due to the incorrect grading. Post Sentence Motion/Motion to Modify Sentence, 4/20/01, at 2. The Commonwealth opposed the motion, arguing that the forgery at issue was correctly graded a second degree felony.

¶ 8 On June 19, 2001, the trial court issued an order granting the motion in part and denying the motion in part. The court changed the classification of the felony offense from a second degree felony to a third degree felony. However, the court did not grant further relief. In his state-ment of matters raised on appeal, Appellant indicated that error occurred because his felony should be graded as a first degree misdemeanor and because the court failed to allow him to negotiate an "amended" plea agreement after reclassifying the crime. Concise Statement of Matters Complained of On Appeal, 7/11/01, at ¶ 9(c). This appeal by Appellant followed.

■ ¶ 9 Appellant first contends that his crime was graded incorrectly as a third degree felony and asks that we remand for a re-grading down to a first degree misdemeanor. 18 Pa.C.S. § 4101 (emphasis added) calls for the grading of forgery as follows:

> (c) Grading.—Forgery is a felony of the second degree if the writing is or purports to be part of an issue of money, securities, postage or revenue stamps, or other instruments issued by the government, or part of an issue of stock, bonds or other instruments representing interests in or claims against any property or enterprise. Forgery is a felony of the third degree if the writing is or purports to be a will, deed, contract, release, commercial instrument, or *other document evidencing, creating, transferring, altering, terminating or otherwise affecting legal relations.* Otherwise forgery is a misdemeanor of the first degree.

■ ¶ 10 Initially, we must note that the Commonwealth did not file a cross appeal and thus cannot challenge the propriety of the trial court's refusal to grade the crime as a second degree felony. *See Holteen v. Holteen,* 413 Pa.Super. 591, 605 A.2d 1275 (1992). Therefore, we express no opinion as to whether this felony could be graded as a second degree felony. The sole issue on appeal is whether it can be graded as a third degree felony or must be graded as a first degree misdemeanor. In concluding that it can be graded as a third degree

felony, we rely upon *Commonwealth v. Sneddon*, 738 A.2d 1026 (Pa.Super.1999). In that case, we held that altering a cash register receipt to obtain a cash refund in excess of the amount paid for a product is forgery graded as a third degree felony. We reasoned that the defendant altered a document, a cash register receipt, and that the receipt was a document evidencing or affecting legal relations under 18 Pa.C.S. § 4101(c). We noted that a cash register receipt is a writing that evidences a contract for the sale of goods, which is a legal transaction. We concluded that by altering the receipt, the defendant altered the legal relationship between the buyer and seller by changing the consideration paid in the contract.

¶ 11 Similarly, Appellant in this case was attempting to obtain the legal right to own a gun, and the application was the document by which he attempted to obtain that legal right. Clearly, the gun application was a document that affected his legal relation with this Commonwealth, and Appellant committed at least a third degree felony by forging that application.

¶ 12 We now address Appellant's next contention. Appellant argues that regardless of whether we grant relief in the form of a modification of the grading of the forgery down to a first degree misdemeanor, he should be afforded an opportunity to be heard as to whether the terms of his guilty plea was "willingly, knowingly, [and] voluntarily entered in light of the three different interpretations that the Commonwealth, the Court, and the defendant placed on the classifications of this offense." Appellant's brief at 16. We agree that Appellant should be permitted to withdraw his plea because the offense was graded incorrectly on the criminal complaint, during the plea negotiations, and at the plea colloquy.

¶ 13 After a sentence has been entered, a guilty plea may be withdrawn only if there is manifest injustice requiring its withdrawal. *Commonwealth v. Hodges*, 789 A.2d 764, 765, 2002 PA Super 1, 7; *Commonwealth v. Stork*, 737 A.2d 789 (Pa.Super.1999). Manifest injustice is established if the plea was not knowingly or voluntarily entered. *Hodges, supra; Stork, supra.*

¶ 14 We addressed the precise factual situation at issue in this case in *Commonwealth v. Muller*, 334 Pa.Super. 228, 482 A.2d 1307 (1984) (Wieand, J. dissenting). In *Muller*, the defendant incorrectly was informed at his plea proceeding that he was pleading guilty to forgery graded as a second degree felony, but the forgery actually was graded correctly as a third degree felony. We held that this allegation did not establish that Appellant had entered an unknowing or involuntary guilty plea and refused to allow him to withdraw it.

¶ 15 Since the decision in *Muller*, however, our Supreme Court and this Court have had occasion to examine the impact of the dissemination of inaccurate information regarding sentencing possibilities on the validity of a guilty plea. *See Commonwealth v. Persinger*, 532 Pa. 317, 615 A.2d 1305 (1992), *Commonwealth v. Carter*, 540 Pa. 135, 656 A.2d 463 (1995), and *Commonwealth v. Hodges, supra*. After examining these cases, we find the precedential value of *Muller* eroded.

¶ 16 In *Persinger*, the defendant pled guilty and while informed of the maximum sentence possible for each crime, he was not informed that the sentences could be imposed consecutively. He received the maximum consecutive sentence possible on each crime. Our Supreme Court ruled that the defendant was permitted to withdraw his guilty plea. The Court concluded that a person cannot decide to plead guilty knowingly and intelligently to a charge

unless he fully comprehends the *maximum* punishment that might be imposed.

¶ 17 In *Carter*, the defendant had entered a *nolo contendere* plea after being advised of each of the maximum sentences that could be imposed. As in *Persinger*, the defendant in *Carter* was *not* informed that the sentences could be imposed consecutively. Carter filed a motion to withdraw his plea alleging that it was not knowingly, voluntarily, or intelligently entered because he was not informed that his sentences could be consecutive. Our Supreme Court refused to allow him to withdraw his plea because while Carter did receive consecutive sentences, the aggregate sentence was *less* than the maximum sentence that he could have received legally on even *one* count. The Court in *Carter* observed that the defendant was not sentenced to a term that *exceeded* his expectations of what he could receive so that his plea was not involuntary or unknowing.

¶ 18 In *Hodges, supra,* this Court synthesized these two Supreme Court pronouncements. We concluded that under the present law, "[W]here a criminal defendant pleads guilty believing that his maximum sentence is less than what he could actually receive by law, there is no manifest injustice unless he receives a higher sentence than what he was told." *Hodges, supra* at 767.

¶ 19 However, in *Hodges,* we were faced, in essence, with the reverse situation as that at issue in *Persinger* and *Carter*. In *Hodges,* an individual pled guilty in order to avoid the death penalty. However, both defense counsel and the Commonwealth had been operating under the mistaken belief that the defendant was older than sixteen years when he committed the crime. Meanwhile, the defendant was less than sixteen years old and could not legally receive the death penalty due to his age. The defendant pled guilty and was sentenced to life imprisonment. Defense counsel discovered that his client actually had been ineligible for the death penalty and moved to withdraw the plea. The trial court denied the motion under *Carter*, reasoning that the defendant had *not* received a higher sentence than what he had been told he could receive by pleading guilty. We reversed, ruling that his plea should be withdrawn. We noted that in *Carter*, the defendant was informed about a sentence that legally could be imposed, whereas the plea in *Hodges* was tainted at the onset because it was entered solely to avoid a sentence that the defendant legally was incapable of receiving. We concluded neither *Persinger* nor *Carter* were applicable, stating:

> In the instant case, the plea was based on a maximum sentence that the court had no authority to impose. The entire process of plea negotiations, therefore, was affected by this grave error. Appellant pled guilty in order to avoid a maximum sentence which, by law, could not be imposed. *We hold that in the event the maximum sentence communicated to a criminal defendant is in fact an illegal sentence, the plea process has been tainted from the outset and manifest injustice is established.*

*Hodges, supra* at 767 (emphasis added).

¶ 20 This case is analogous to *Hodges* rather than *Persinger* and *Carter*. Appellant was charged with and entered plea negotiations to avoid a sentence for a second degree felony, not a third degree felony. Indeed, Appellant observes that because the forgery count was graded incorrectly, there are different guideline scores applicable. This change, Appellant continues, may have "resulted in different plea offers and negotiations and considerations of partial confinement requested by the defendant." Appellant's brief at 15. Appellant was charged with a second de-

gree felony, carrying a ten-year maximum. The maximum legal sentence that Appellant faced *when he entered plea negotiations and the plea itself was, in fact, less than ten years.* He indicated on the record that he had conducted research, knew that he faced a ten-year sentence, and was seeking to avoid that sentence by pleading guilty. Meanwhile, the court did not have the legal authority to impose that sentence. The plea was fatally flawed from the start, as in *Hodges*, by the defendant's desire to avoid a sentence that the court did not have the power to impose. Hence, we agree with Appellant's position that plea negotiations were tainted at the outset by misinformation about sentences. Therefore, it is clear that Appellant should be permitted to withdraw his guilty plea.

¶ 21 Order affirmed in part and reversed in part. Appellant's guilty plea is vacated. Case remanded. Jurisdiction relinquished.