J-A18033-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOEL P. GALBIATI | : | |
| | : | |
| Appellant | : | No. 1036 WDA 2019 |

Appeal from the Judgment of Sentence Entered June 2, 2017
In the Court of Common Pleas of Cambria County Criminal Division at
No(s):  CP-11-CR-0000287-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOEL P. GALBIATI | : | |
| | : | |
| | : | No. 1037 WDA 2019 |

Appeal from the Judgment of Sentence Entered June 2, 2017
In the Court of Common Pleas of Cambria County Criminal Division at
No(s):  CP-11-CR-0000673-2016

BEFORE: BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED FEBRUARY 18, 2021**

Appellant Joel P. Galbiati appeals from the judgment of sentence following an open guilty plea to two charges of robbery.[1]  Appellant contends that the trial court erred by denying his presentence motion to withdraw his

---

[1] 18 Pa.C.S. § 3701(a)(1)(iv), (v).  Appellant entered a plea of guilty to each charge of robbery, but we use the singular "plea" for the parties' convenience.

guilty plea. We vacate the judgment of sentence, vacate Appellant's guilty plea, vacate the order denying Appellant's presentence motion to withdraw his guilty plea, and remand for further proceedings.

The facts underlying Appellant's guilty plea are unnecessary to summarize except to note that the charges at docket no. 287-2016 arose from a robbery that occurred on December 6, 2015, and the charges at docket no. 673-2016 arose from a robbery that occurred on December 2, 2015. At the time of the guilty plea hearing, Appellant was *pro se*, although the trial court had appointed Devon Malloy, Esq., as Appellant's standby counsel. On February 2, 2017, Appellant entered an open guilty plea to two counts of robbery.[2] Specifically, Appellant pled guilty to felony three robbery at docket no. 287-2016, and felony two robbery at docket no. 673-2016.[3] At the hearing, the trial court also discussed the maximum penalties at the guilty

---

[2] As we explain further below, although the parties negotiated on the length of the sentence, the plea itself was open. Guilty Plea, 2/2/17.

[3] Appellant initialed each page of and signed a nine-page "Guilty Plea Explanation of Defendant's Rights Form," which, among other things, set forth the maximum punishment and the sentencing guidelines standard range. **See** Guilty Plea Explanation of Def.'s Rights, 2/2/17, at 1; **see also** N.T. Guilty Plea, Hr'g, 2/2/17, at 3. The form stated Appellant could receive an aggregate maximum sentence of seventeen years' imprisonment. Appellant affirmatively indicated that no one forced him to enter the guilty plea, he was doing this of his own free will, and he was not threatened. Guilty Plea Explanation of Def.'s Rights at 9.

plea hearing. N.T. Guilty Plea Hr'g, 2/2/17, at 5.[4] In response to the trial court's query, Appellant agreed that he discussed with Attorney Malloy "that any term of incarceration" would "be calculated" under the sentencing guidelines' deadly weapon used matrix. *Id.* at 9. The trial court ordered a presentence investigation and scheduled sentencing for March 16, 2017. *Id.* at 11.[5]

On March 8, 2017, Appellant filed a *pro se* presentence motion to withdraw his guilty plea. Appellant's Mot. to Withdraw Plea Pursuant to Pa.R.Crim.P. 591, 3/8/17, at 1. We quote Appellant's *pro se* motion in relevant part as follows:

> 6. The Commonwealth and [Attorney Malloy] led [Appellant] to believe that not only would the cases be ran current [sic], but also if [Appellant] did not plea to the terms that the three strikes provision would be used.
>
> 7. [Appellant] feels that he was "bullied" and also pressured [into] taking the plea at the last minute without having time to properly view and knowingly, intelligently go over the agreement with counsel.

---

[4] According to the transcript of the guilty plea hearing, the trial court advised Appellant he could receive a maximum sentence of **two** years' imprisonment for a felony of the second degree, "and a felony of the third degree carries a maximum penalty of up to seven years in jail . . . . So I would have the authority to send you up to 17 years in jail . . . ." N.T. Guilty Plea Hr'g at 5. It is not clear whether the trial court misspoke concerning the maximum sentence for a felony of the second degree which is ten years, or if it was a clerical error, but the trial court accurately notified Appellant of his maximum potential aggregate sentence of seventeen years. *See id.*

[5] Meanwhile, Appellant filed a *pro se* motion for furlough for drug treatment. Attorney Malloy also filed a similar motion on Appellant's behalf.

*Id.* at 1-2. Appellant therefore requested that he be permitted to withdraw his guilty plea in order for him "to properly go over the plea agreement knowingly and intelligently with his counsel and also without being pressured." *Id.* at 2.

On April 4, 2017, the trial court held a hearing on Appellant's presentence motion to withdraw his guilty plea. At the hearing, Appellant testified that the "reason for my withdrawal would be . . . that I wasn't fully aware of the sentencing under the deadly weapon enhancement matrix." N.T. Presentence Mot. to Withdraw Guilty Plea, 4/4/17, at 2. Appellant continued, "[f]urthermore, I was led to believe if I didn't take the plea that I would be sentenced under the three strikes provision which is not the case only after the fact, [sic] [did I learn] so I wasn't fully aware of everything and we didn't go over everything totally in its entirety, that's the reason for my withdrawal if the [c]ourt would grant that." *Id.*

In pertinent part, at the hearing, Attorney Malloy stated as follows:

[Attorney Malloy]: Your Honor, if I may state, as you know, [Appellant] was proceeding *pro se* for quite sometime in his own defense. He asked me to step in in terms of the plea negotiations and speak with the District Attorney about getting these charges run concurrent versus consecutive. When I stepped in, that's where we came up with the 30 to 36 which allowed the cases to run concurrent. It was a better deal than what [Appellant] had negotiated on his own. And [Appellant] was aware that he was going to be sentenced under the deadly weapons matrix. I explained thoroughly to him if he was convicted, following going to trial on these charges, then he could be sentenced under the three strikes rule. I believe we had ample time to discuss the terms of this plea. And at the time this plea was made, we were days away from choosing the jury in that first trial. So it is my

- 4 -

contention to the [c]ourt that all of this was explained to [Appellant] at length.

*Id.* at 5. Appellant responded that "we did go over and we had minimal amount of time." *Id.* The trial court then continued the hearing to May 23, 2017.

At the May 23, 2017 hearing, the Commonwealth contended that Appellant did not assert his innocence and "claimed to be misunderstanding of perhaps the three strike[s] statute." N.T. Presentence Mot. to Withdraw Guilty Plea, 5/23/17, at 2. The Commonwealth continued as follows:

> [The Commonwealth]: During the course of plea negotiations I did raise that as a possibility that the Commonwealth would seek that if our intent was to try these cases separately. So there were robbery cases that were filed. We would not make a motion to consolidate, but we would try them separately. If we had received a conviction on the first case, then we would proceed to trial on the second case. And that's when the three strikes come into play, because if we were successful on conviction to one of the first degree felonies, then that would trigger that statu[t]e and that would enhance the penalty that he could receive on the second case.
>
> So because his prior record score is a four and because three strikes would only really pertain to the second case that would be tried, not the first case, he would be looking at a significant sentence if the Commonwealth were successful in obtaining two convictions on those cases.

*Id.* at 2-3. The Commonwealth maintained that Appellant understood the terms of his plea agreement and that it opposed Appellant's presentence motion to withdraw his guilty plea. *Id.* at 4.

At the hearing, Attorney Malloy confirmed that she discussed the plea with Appellant at an in-person prison meeting and on a telephone call. *Id.*

- 5 -

Attorney Malloy stated that she "covered the three strikes rule, the impact that that would have should these cases go to trial consecutively, the deadly weapon enhancement . . . ."[6] **Id.**

On May 24, 2017, the trial court denied Appellant's presentence motion to withdraw his guilty plea.[7]  Order, 5/24/17, at 1 (unpaginated).  After summarizing **Commonwealth v. Carrasquillo**, 115 A.3d 1284 (Pa. 2015), the trial court reasoned as followed:

> In the instant case, [Appellant] has not made **any** assertion of innocence.  Rather, he has asked the [c]ourt to withdraw his guilty plea so that he may "properly go over the plea agreement knowingly and intelligently with his counsel and also without being pressured."  He claims that he was "bullied" into the plea agreement.  Furthermore, prior to requesting withdrawal of his guilty plea, [Appellant] filed an uncounseled Motion for Furlough to Drug Treatment on February 20, 2017.  [Attorney Malloy] then filed a similar Motion on March 16, 2017.  We do not believe that this serial filing of motions evidences any assertion of innocence such that to deny [Appellant's] Motion to Withdraw his plea would work a miscarriage of justice.  We find that allowing a withdrawal of the plea would in no way promote fairness and justice.  We do not find that there is any fair and just reason for granting his request.  [Appellant] has not indicated that he is innocent and wants a trial but rather that he wants a different deal.  At his guilty plea hearing, [Appellant] indicated that his court-appointed stand by counsel would be now serving as his counsel and when asked about her representation and his satisfaction with it, he indicated he was "very satisfied."

---

[6] Attorney Malloy noted that Appellant had previously counteroffered with two consecutive terms of eighteen to twenty-four months in prison, but "she [had] stepped in to assist with plea negotiations" and reduced the sentence to thirty to thirty-six months' imprisonment.  **Id.** at 5.

[7] Attorney Malloy had also filed a motion to withdraw as standby counsel, which the trial court granted on May 23, 2017.  Order, 5/23/17.

> At the hearing, on May 23, 2017, [Attorney Malloy] indicated in her capacity as an officer of the [c]ourt that the plea agreement entered into was agreed upon so that [Appellant] could receive a concurrent sentence the Commonwealth would forego trying him separately and requesting he be sentenced as a repeat violent offender under what is commonly referred to as the Three Strikes Law. She indicated that this was discussed with [Appellant]. [Appellant] indicated that this conversation never took place. We find Attorney Malloy's recitation to the [c]ourt credible.
>
> It is the [c]ourt's view that [Appellant] is playing games and in exercising our discretion we have considered the entire record of these cases. We realize that the Supreme Court has announced in ***Carrasquillo*** that these types of motions should be liberally granted, however, we also note the Court said that such a motion "has its limits, consistent with the affordance of a degree of discretion to the common pleas courts." We believe that [Appellant] has reached that limit and accordingly exercise our discretion to deny him relief.

***Id.*** at 2-3 (unpaginated and footnote omitted).

On May 26, 2017, Appellant filed a *pro se* motion for reconsideration, which reiterated his arguments that he did not sufficiently review the plea and "was led to believe that if he did not take the offer[,] the Three Strikes Provision would be invoked." Appellant's Mot. for Recons., 5/26/17, at 1 (unpaginated). In support, he claimed that one of the two robberies in question would not qualify as a crime of violence as there was no allegation of a weapon, and that his "past record would . . . show the same." ***Id.*** at 2 (unpaginated).

On June 2, 2017, the trial court held a sentencing hearing, at which the trial court verified that Appellant wished to continue to proceed *pro se*. Thereafter, the following exchange occurred:

> THE COURT: So your desire is to represent yourself on your motion to have my order of May 24, 2017, vacated and let you withdraw your plea; is that right?
>
> [Appellant]: Yes, Your Honor.
>
> THE COURT: So do you want to make your argument?
>
> [Appellant]: Although I am in opposition of the sentencing matrix being used, I mean, you know, I will plead guilty to it. But the sentencing matrix used that we're using is a deadly weapon enhancement matrix is what I am in opposition to.

N.T. Sentencing Hr'g, 6/2/17, at 3.

The trial court, the Commonwealth, and Appellant then discussed the deadly weapon enhancement. *Id.* at 3-5. The Commonwealth noted that Appellant brandished a knife in the robbery at docket no. 673-2016, which is why the Commonwealth sought the deadly weapon used matrix. *Id.* at 5. The Commonwealth reiterated it had no objection to the trial court imposing concurrent sentences. *Id.* The trial court noted that at the guilty plea hearing, Appellant's guilty plea colloquy "reference[d] the knife in the one and not in the other," to which Appellant responded, "Correct." *Id.* at 5; *accord* N.T. Guilty Plea Hr'g, 2/2/17, at 7.

The trial court then stated as follows:

> THE COURT: Do you have any other argument as to why I should change my mind?

[Appellant]: I do not, Your Honor. I think the victims need closure on both sides. I think I took up enough of the [c]ourt's time. I believe that we should just move forward. . . .[8]

THE COURT: All right. So you just told me you want to move on with this; is that correct?

[Appellant]: I do want to move on although I do want to make on the record intention that I do not agree with the deadly weapon enhancement and I will be filing the proper motion post-sentence.

THE COURT: Understood. So you had an opportunity to think this over?

[Appellant]: Yes, Your Honor. . . .

N.T. Sentencing Hr'g, 6/2/17, at 6-7.

Appellant then submitted documents, after which the following discussion occurred:

THE COURT: All right. So as I understand it, you are withdrawing your motion to withdraw your guilty plea;[9] however, you are contesting the guideline that applies?

[Appellant]: Correct.

THE COURT: All right.

[Appellant]: I am contesting the weapon being used, possessed.

[THE COURT]: Just so we're clear on the record here though, you're making a decision to withdraw the request or withdraw your guilty plea, that's clear; is that right?

---

[8] We omitted an unrelated discussion about the status of one of Appellant's ongoing cases in another county.

[9] Because the trial court previously denied Appellant's presentence motion to withdraw his guilty plea, the trial court was presumably referencing Appellant's then-unresolved *pro se* motion for reconsideration.

- 9 -

[Appellant]: That's correct, Your Honor.

*Id.* at 7.

Subsequently, the trial court and Appellant discussed whether Appellant

was threatened into taking the plea:

THE COURT: . . . And then you said in one of your motions [to withdraw his guilty plea] here that you were bullied into this, yet when I read through all this stuff, which I did yesterday, your plea was actually your counter offer to the plea offer made by the [Commonwealth].

[Appellant]: Correct. Correct.

THE COURT: So that made no sense to me, why you would say you were bullied into that plea when in fact you suggested it.

[Appellant]: The plea I suggested was the consecutive sentence under the basic sentencing matrix, minus the deadly weapon enhancement, understood, again, I contest the deadly weapon enhancement, I am sorry, but—

THE COURT: So do you understand how it would be difficult at times for me to believe when you are sincere and when you are not?

[Appellant]: I do, Your Honor. . . .

*Id.* at 10. The trial court then sentenced Appellant to thirty-six to seventy-

two months' imprisonment. *Id.* at 11.

On June 12, 2017, Appellant filed a *pro se* post-sentence motion to

withdraw his guilty plea. Appellant claimed that he should be permitted to

withdraw his guilty plea because the three strikes provision could not apply to

him. Post-Sentence Mot., 6/12/17, at 1 (unpaginated). Appellant asserted

that Attorney Malloy informed him that if he did not accept the plea, the

- 10 -

Commonwealth would invoke the three strikes provision. *Id.* Appellant then argued as follows:

> [Appellant], and only after taking the plea offer, and doing research on his own, asked [Attorney Malloy] about the issue with the plea offer "being sentence[d] under the deadly we[a]pon enhancement" [and he] wanted to withdraw such plea offer [due] to the misguided information in order to bull[y Appellant into] taking the plea.

*Id.* at 2 (unpaginated).

On October 4, 2017, the trial court held a hearing on Appellant's *pro se* post-sentence motion to withdraw his guilty plea. Among other arguments, Appellant reiterated that the three strikes provision did not apply and that his plea was unlawfully induced. *See, e.g.*, N.T. Hr'g, 10/4/17, at 6 (Appellant arguing that "Me being fearful of a 25-year minimum sentence, I'm being faced with, hey, take a three to six or a 25-year sentence"),[10] 9 (arguing his guilty plea was unlawfully induced because he "was given the wrong information"). On October 12, 2017, the trial court denied Appellant's post-sentence motion to withdraw his guilty plea.

Appellant timely appealed,[11] and raises the following issues:

---

[10] A second conviction for a crime of violence results in a ten-year mandatory minimum sentence and not a twenty-five year mandatory minimum sentence. 42 Pa.C.S. § 9714(a)(1).

[11] On November 20, 2017, the trial court docketed Appellant's notice of appeal, which included a certificate of service dated October 30, 2017. It appears the trial court may have received the notice of appeal earlier, as on November 8, 2017, the trial court ordered Appellant to comply with Pa.R.A.P.

- 11 -

> 1. Whether the trial court erred when it denied Appellant's motion to withdraw guilty pleas where the trial court applied the incorrect legal standard?
>
> 2. Whether the trial court erred when it denied Appellant's motion to withdraw guilty pleas where Appellant established fair and just reasons for withdrawing his guilty pleas?
>
> 3. Whether the trial court erred when it denied Appellant's motion to withdraw guilty pleas where the Commonwealth of Pennsylvania failed to establish that it would be substantially prejudiced by the withdrawal of Appellant's guilty pleas?

Appellant's Brief at 3.

---

1925(b) within twenty-one days. On December 1, 2017, the trial court docketed Appellant's Rule 1925(b) statement, which had a certificate of service dated November 27, 2017. The trial court filed its Rule 1925(a) opinion on December 8, 2017. This Court dismissed Appellant's appeal due to his failure to file a brief. Order, 6/5/18. On December 28, 2018, Appellant filed a motion to reinstate his direct appeal rights *nunc pro tunc*, which the trial court granted on January 25, 2019.

The trial court appointed Gary F. Vitko, Esq., as Appellant's appellate counsel. Order, 1/25/19. According to the trial court, Attorney Vitko never received the court's January 25, 2019 order, however. On June 4, 2019, the trial court again reinstated Appellant's direct appeal rights *nunc pro tunc* and served the order on Attorney Vitko. Order, 6/4/19. On July 9, 2019, the trial court ordered Appellant to comply with Rule 1925(b). Attorney Vitko filed an untimely Rule 1925(b) statement on October 4, 2019, which raised one claim: the trial court "erred in dismissing the PCRA of [Appellant] because the claims raised involves errors that would render the proceedings so unfair that it would constitute a miscarriage of justice." Rule 1925(b) Statement, 10/4/19.

On November 19, 2019, the trial court removed Attorney Vitko as appellate counsel and appointed Toby McIlwain, Esq., as appellate counsel. Order, 11/19/19. Attorney McIlwain moved to have this Court remand the matter to the trial court in order for him to file an amended Rule 1925(b) statement. Attorney McIlwain filed an amended Rule 1925(b) statement, and the trial court prepared a responsive opinion. Attorney McIlwain currently represents Appellant.

We summarize Appellant's arguments for all three issues together, as they are interrelated. Appellant argues that the trial court erred by denying his presentence motion to withdraw his guilty plea by using an incorrect legal standard. *Id.* at 12-13. Appellant then summarizes the law for a presentence motion to withdraw guilty plea and challenges the trial court's reasoning. *Id.* at 13-19; *see id.* at 14 (arguing that the trial court abused its discretion by applying "an incorrect legal standard"). Appellant argues that his presentence motion to withdraw his guilty plea set forth "fair and just reasons" for withdrawal. *Id.* at 20.

Appellant explains that the Commonwealth could not invoke the three strikes provision against him because he had never been previously convicted of a violent crime. *Id.* at 23-24. Appellant emphasizes that the "clear and unambiguous language of the statute sets forth that the Three-Strikes Provision is triggered only in instances where a defendant had previously been convicted of a crime of violence at the time the current offense was committed." *Id.* at 24 (emphases and citation omitted). Appellant concludes that he could not have knowingly, intelligently, and voluntarily entered a guilty plea given the Commonwealth's threat was not supported by the law. *Id.* at 24-25. Finally, Appellant claims the Commonwealth failed to establish it would be substantially prejudiced. *Id.* at 32.

The Commonwealth counters that Appellant withdrew his presentence motion to withdraw his guilty plea. Commonwealth's Brief at 4. The

Commonwealth therefore reasons that "any later request made to withdraw [Appellant's] plea in a post-sentence motion must have met the higher burden of 'manifest injustice' required to withdraw a guilty plea post-sentence." *Id.* at 5. The Commonwealth, however, stated that it would "proceed . . . to argue based upon the presumption that this Court is reviewing a denial of [Appellant's] pre-sentence motion to withdraw [his] guilty plea . . . ." *Id.*

In support, the Commonwealth disagrees with Appellant's argument that the trial court misapplied *Carrasquillo*. *Id.* at 5-7. The Commonwealth reiterates the trial court's reasoning, which we summarize below, and contends the trial court correctly applied the "fair and just reason" standard for resolving a presentence motion to withdraw a guilty plea. *Id.* at 6. The Commonwealth next argues that Appellant's allegation that "he was bullied or pressured into the plea" is "belie[d]" by the record. *Id.* at 7. The Commonwealth emphasizes that Appellant signed a written guilty plea colloquy identifying the maximum possible sentence and acknowledged he was not pressured into accepting the plea. *Id.* at 7-8. The Commonwealth concludes that the trial court correctly held Appellant failed to establish a "fair and just" reason for withdrawing his plea. *Id.* at 9. Therefore, the

Commonwealth reasons, the trial court was not required to consider whether the Commonwealth would be prejudiced.[12] *Id.*

The trial court asserted that Appellant's "plea was not unlawfully induced." Trial Ct. Op., 12/8/17, at 1. The trial court cites to the written guilty plea colloquy and argues that Appellant has a history of "representing one thing under oath and then retracting or modifying those statements in later proceedings or pleadings." *Id.* at 2 (footnote omitted). The trial court summarily concludes that Appellant "has not pointed out, nor [has it] found in [its] independent review of the record, any false representations relative to the 'three strikes law.'"[13] *Id.* at 4 (formatting altered).

We review a trial court's ruling on a pre-sentence motion to withdraw a guilty plea for an abuse of discretion. *Commonwealth v. Elia*, 83 A.3d 254, 261 (Pa. Super. 2013). Our Supreme Court has held that "[t]he proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice." *Carrasquillo*, 115 A.3d at 1292; *see also* Pa.R.Crim.P. 591(A) (stating that

_____

[12] The Commonwealth's appellate brief did not address Appellant's contention that it misstated the three strikes doctrine when it discussed the plea with Appellant.

[13] Except for that sentence, the trial court did not otherwise address the issue of the application of a mandatory minimum sentence. The trial court also did not address the issue of whether the Commonwealth could apply the three strikes provision if Appellant elected to proceed to trial.

- 15 -

"[a]t any time before the imposition of sentence, the court may, in its discretion, permit . . . the withdrawal of a plea").

With respect to the three strikes statute, 42 Pa.C.S. § 9714(a)(1), provides as follows:

> (1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary.

42 Pa.C.S. § 9714(a)(1). Our Courts have held that the "previous conviction must occur **prior** to commission of subsequent offense" in order for the defendant to be sentenced as a repeat offender. *Commonwealth v. Shiffler*, 879 A.2d 185, 194 (Pa. 2005) (summarizing *Commonwealth v. Dickerson*, 621 A.2d 990, 992 (Pa. 1993)); *see also Commonwealth v. McClintic*, 909 A.2d 1241, 1250 (Pa. 2006) (noting, "[p]lugging [robbery] into Section 9714(a)(1) requires a sentence enhancement where a person is convicted of robbery, if at the time he or she committed the current robbery, the person had another conviction for a crime of violence").

For example, in *Commonwealth v. Barbosa*, 819 A.2d 81 (Pa. Super. 2003), the Court resolved an allegation that the Commonwealth misrepresented the application of the three strikes statute in connection with the entry of a negotiated guilty plea. *Barbosa*, 819 A.2d at 82. Specifically, in *Barbosa*, the defendant appealed from an order denying his Post-

- 16 -

Conviction Relief Act petition. *Id.* The defendant claimed that the Commonwealth incorrectly stated he "was subject to a life sentence under the 'three strikes' rule." *Id.* The defendant argued that the Commonwealth "falsely represented that if he did not accept the offered plea, he would be subject to Pennsylvania's 'three strikes' provision . . . ." *Id.* at 83. The PCRA court denied relief without a hearing, and the defendant appealed. *Id.* at 82.

In resolving the defendant's issue, the *Barbosa* Court explained as follows:

> Our appellate courts have directed the withdrawal of guilty pleas in certain circumstances where the defendant justifiably was unaware of or misled about the "compared to what" of the maximum sentence. In *Commonwealth v. Hodges*, 789 A.2d 764 (Pa. Super. 2002),[14] a 16-year-old defendant was permitted to withdraw a negotiated plea where he pled guilty to avoid the death penalty but was in fact ineligible for the death penalty because of his age. Similarly, in *Commonwealth v. Lenhoff*, 796 A.2d 338 (Pa. Super. 2002),[15] the defendant was permitted to withdraw a negotiated plea where, although his sentence was in accord with the plea bargain, he was told that he faced a 10-year maximum when it was actually less.
>
> At the same time, we do not believe that every mistake in computing the possible maximum or advising the defendant of the possible maximum will amount to manifest injustice justifying the withdrawal of a guilty plea; the mistake must be material to the defendant's decision to plead guilty. This determination must be fact- and case-specific. Certainly, if a defendant were to plead guilty to avoid a death sentence when there is no possibility of a death sentence, then this mistake would clearly be material. On

---

[14] In *Hodges*, the defendant had filed a post-sentence motion to withdraw his guilty plea. *Hodges*, 789 A.2d at 765.

[15] In *Lenhoff*, the defendant filed a post-sentence motion to "allow further plea negotiations." *Lenhoff*, 796 A.2d at 340.

the other hand, suppose there were a robbery of five people together with conspiracy and weapons charges, and the defendant were told that he faced a maximum sentence of 70 to 140 years rather than 65 to 130 years. If the plea negotiations resulted in a sentence of 5 to 10 years, then this mistake would not be material.

[The defendant's] situation, however, falls somewhere in the middle. Our decision, therefore, is to remand for a determination as to whether (a) [the defendant] knew of the possible maximum sentence and (b) whether any lack of knowledge or mistaken knowledge on [the defendant's] part was material to his decision to enter the plea.

*Id.* at 83.

The ***Barbosa*** Court explained its mandate by reiterating that "the failure to advise a defendant of the possible maximum sentence will not necessarily justify the withdrawal of an otherwise voluntary guilty plea. To amount to manifest injustice justifying withdrawal of the plea, the mistake must be so great as to have a material effect on the defendant's decision to plead guilty." *Id.* at 86.

Here, like the defendants in ***Hodges*** and ***Lenhoff***, [the defendant] claims that he was threatened with maximum sentences that could not lawfully be imposed and that neither his lawyer nor the court told him the correct maximum sentence. Because [the defendant] claims that he was advised of a possible life sentence when that in fact was not permissible, it cannot be said that the record is so clear that any mistaken belief about the maximum would not have materially affected his decision to enter the plea.

Because we find that the facts alleged in [the defendant's] PCRA petition, if proven, would entitle him to relief, we hold that the PCRA court abused its discretion in refusing to conduct a hearing.

*Id.* The **Barbosa** Court therefore reversed the denial of PCRA relief and remanded for a hearing. *Id.* at 87.

Initially, as we set forth above, on May 24, 2017, the trial court denied Appellant's March 8, 2017 *pro se* pre-sentence motion to withdraw his guilty plea. Order, 5/24/17, at 1. At Appellant's sentencing hearing, however, Appellant agreed to the trial court's statement that he was "withdrawing [his] motion to withdraw [his] guilty plea." N.T. Sentencing Hr'g at 7. Appellant, however, cannot withdraw a motion that the trial court previously resolved. Therefore, notwithstanding the parties' and the trial court's mutual misunderstanding, any request for withdrawal could only have been in reference to Appellant's *pro se* motion for reconsideration.

Turning to the merits, as we quoted above, the Commonwealth admitted that it "would seek [imposition of the three strikes doctrine] if our intent was to try these cases separately." N.T. Presentence Mot. to Withdraw Guilty Plea, 5/23/17, at 2-3. The Commonwealth explained that if it "had received a conviction on the first case, then we would proceed to trial on the second case. And that's when the three strikes come into play, because if we were successful on conviction to one of the first degree felonies, then that would trigger that statu[t]e and that would enhance the penalty that he could receive on the second case." *Id.* As we stated previously, the trial court held that it found no "false representations relative to the 'three strikes law.'" Trial Ct. Op. at 4 (formatting altered).

Here, Appellant argues that because he had no prior conviction for a crime of violence, Section 9714(a)(1) could not apply to him. The Commonwealth, however, claimed that "the three strikes comes into play," if it obtained a conviction on one robbery, and then proceeded to trial on the second robbery. N.T. Mot. to Withdraw Guilty Plea at 2-3. The Commonwealth's position contradicts our precedents stating that "the previous conviction must occur **prior to commission** of subsequent offense." *Shiffler*, 879 A.2d at 194 (emphasis added). But neither the Commonwealth nor the trial court addressed whether the three strikes provision would apply given the two robberies were committed on December 2, and December 6, 2015, and there was no previous conviction. *See id.* Under the circumstances, we deem it prudent to remand for a determination by the trial court as to whether the three strikes provision would apply. If the trial court holds that the Commonwealth misinformed Appellant, then the trial court must resolve whether Appellant "made [a] colorable demonstration, under the circumstances, such that" the trial court should permit Appellant to withdraw his plea. *See Carrasquillo*, 115 A.3d at 1292.

Accordingly, we vacate the judgment of sentence, vacate Appellant's guilty plea, vacate the order denying Appellant's presentence motion to withdraw his guilty plea, and remand for further proceedings.

Judgment of sentence vacated. Guilty plea vacated. Order denying Appellant's presentence motion to withdraw his guilty plea vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/18/2021