J-A03026-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHRIS RUBENDALL AND SUSAN HANSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 194 EDA 2025 |
| SDJ CONSTRUCTION CO., INC. D/B/A SDJ CONSTRUCTION, YVON LARRIVEE, DANIEL LARRIVEE, & SHAWN LARRIVEE | : | |

Appeal from the Judgment Entered January 14, 2025
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2019-28657

BEFORE:   BOWES, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY McLAUGHLIN, J.:                **FILED JUNE 8, 2026**

Chris Rubendall and Susan Hanson (collectively, "Homeowners") appeal from the judgment entered on their claims against SDJ Construction Co., Inc. d/b/a SDJ Construction ("SDJ") and its owners: Yvon Larrivee, Daniel Larrivee, and Shawn Larrivee ("the individual defendants") (collectively, "Defendants"). Homeowners argue the court erred in denying their post-trial motion for judgment notwithstanding the verdict ("JNOV"). We affirm.

Homeowners filed a complaint alleging they hired SDJ to remodel part of their home and construct an addition. Homeowners asserted that SDJ provided a four-page written estimate based on Homeowners' architectural

_____

* Retired Senior Judge assigned to the Superior Court.

blueprints, for $136,940. Homeowners claimed they accepted the estimate and made a down payment in July 2019, before work began. They alleged that as work progressed, they paid installments under the terms of the estimate, paying SDJ a total of $109,552.

According to the complaint, Homeowners began to identify defects in the construction, but SDJ assured them these would be resolved. Homeowners alleged that they sent SDJ punch lists in September and October 2019 and requested that an inspector from the local township inspect the addition. The inspector issued a report stating the addition failed the inspection. Homeowners fired SDJ. Homeowners hired a private certified inspector, who issued a report noting multiple code violations in the addition. Homeowners alleged the entire addition would need to be demolished and rebuilt.

Homeowners' amended complaint brought six claims against Defendants: (I) breach of contract, (II) unjust enrichment (III) breach of implied warranty of reasonable workmanship, (IV) violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), (V) violation of the Home Improvement Consumer Protection Act ("HICPA"), (VI) fraud, and (VII) piercing the corporate veil.

Homeowners brought their first three counts against SDJ only. In count I, for breach of contract, Homeowners alleged the estimate constituted an agreement under which SDJ had failed to perform. In count II, Homeowners alternatively pled that SDJ had been unjustly enriched for failing and refusing "to fully and properly perform the home improvement services for which they

were already paid." Am. Compl., 1/27/20, at ¶ 83. Count III, for breach of implied warranty of reasonable workmanship, alleged the addition constructed by SDJ was "structurally unsound, dangerous, and uninhabitable," *id.* at ¶ 86, and that its construction was done "in direct contravention of the applicable accepted industry building practices, applicable building codes, and the plans, specifications, and [b]lueprints," *id.* at ¶ 87.

The remaining counts were brought against both SDJ and its owners, the individual defendants. In count IV, Homeowners alleged that Defendants violated several provisions of the UTPCPL that prohibit "engaging in unfair methods of competition and unfair and deceptive acts and practices." *Id.* at ¶ 94 (citing 73 P.S. § 201-2(4)(v), (vii), (ix), (xiv), (xvi), and (xxi)). Count V alleged that Defendants violated a provision of the HICPA by deviating from the blueprints. *Id.* at ¶ 103 (citing 73 P.S. § 517.9). In count VI, for fraud and deceit, Homeowners alleged Defendants knowingly misrepresented the value of the construction and overcharged them. The final count, count VII, alleged the individual defendants were personally liable for SDJ's conduct under either an alter ego theory or participation theory.

Homeowners sought the return of the amount they paid SDJ, plus additional damages, attorneys fees, and statutory damages under the UTPCPL

and the HICPA. Following Defendants' preliminary objections to the amended complaint, the court struck count VI, for fraud and deceit.[1]

Prior to trial, Defendants filed a motion *in limine* seeking preclusion of evidence related to count VII for piercing the corporate veil and holding the individual defendants personally liable. The court issued an order stating it would schedule a post-trial hearing on this count if it remained relevant after a jury verdict on the other counts.[2] Rather than a jury trial, however, the case proceeded to a three-day bench trial. At the commencement of trial, the court stated that it would try the count for piercing the corporate veil during the bench trial. *See* N.T., 3/25/24, at 9-10.

Homeowners presented the following witnesses: Hanson; Yvon and Daniel Larrivee (as if on cross); Avery Soderman, an expert in chimney and fireplace inspection and construction; Vincent Minnucci, an expert in home inspection; Kenneith Seiler, an expert in structural engineering; Charles Szotak, a masonry contractor; and the deposition testimony of Brad Bollinger,

---

[1] Defendants filed counterclaims. The court found in favor of Homeowners on Defendants' counterclaims, and Defendants have not appealed that ruling. We will not address the counterclaims further.

[2] The order stated,

> As there is no right to a jury trial on these claims, [Homeowners are] precluded from presenting any evidence regarding piercing the corporate veil, alter ego, and participation theory to the jury. Should this claim be relevant after a jury verdict on the remaining causes of action, a post-trial hearing shall be scheduled before the undersigned to address this cause of action.

Order, 3/8/24, at 1.

- 4 -

an inspector for the township. Defendants countered with Yvon Larrivee and Daniel Larrivee; David Ciabattoni, the masonry subcontractor who constructed the fireplace; and Julie Stephens, the licensed architect who designed the addition.

Following the close of evidence, the parties submitted proposed findings of fact and conclusions of law. Homeowners asked the court to find in their favor on counts I through V; they did not address count VII, for piercing the corporate veil. Defendants argued that SDJ substantially completed the contract, and deviated from the written estimate only when necessary to accommodate Homeowners' requested design changes or had done so with Homeowners' and/or the architect's approval. Defendants maintained that Homeowners breached the agreement by terminating SDJ before it was able to complete construction.

The court issued a decision, acknowledging that Homeowners had proceeded to a bench trial on every count except the stricken count, count VI. Trial Court Decision, 11/25/24, at 1. The court found in Homeowners' favor, in part, on their claim for breach of implied warranty of reasonable workmanship. The court determined that, according to the estimate, Defendants had agreed to install a fireplace and chimney with two flutes, and Homeowners' evidence clearly established the resulting fireplace and chimney were deficient and not in compliance with the code. The court awarded Homeowners $30,700 to demolish and reconstruct the fireplace and chimney.

The court found that Homeowners had failed to prove any other claim. It regarded Homeowners' evidence as unclear and unconvincing:

> In order for a party to meet its burden of proof[,] the finder of fact must be able to follow the evidence presented and the evidence must support the allegations pled. As the court indicated both on and off the record to counsel, the presentation of evidence was confusing and disjointed. The clear articulation of the facts in closing arguments was not supported by the manner in which the evidence was produced in court. As such, the Court finds the [Homeowners] met their burden of proof by a preponderance of the evidence as to the construction of the chimney only.
>
>  . . . [Homeowners] have not met their burden of proof as to any of their other causes of action nor have they established a breach of implied warranty of reasonable workmanship relating to any other work complained of in their Amended Complaint. The presentation of evidence was unclear and not convincing to this finder of fact.[1]
>
> _____
>
> [1] This Court informed [Homeowners] multiple times regarding its confusion of [Homeowners]' presentation of evidence. The Court has unsuccessfully spent substantial time reviewing the transcript following trial in attempt to alleviate its confusion.

*Id.* at 2 & n.1.

Homeowners filed a post-trial motion for JNOV, seeking judgment in their favor on counts I through V. The motion did not address count VII, for piercing the corporate veil, or discuss any evidence or law supporting that count.[3]

_____

[3] The motion also requested the court enter damages in the amount of $145,700 and hold a hearing to determine the award of attorneys' fees and statutory damages under the HICPA and the UTPCPL.

The court denied the motion for JNOV. Homeowners filed a praecipe to enter judgment against SDJ and the individual defendants, and the prothonotary entered judgment accordingly. This appeal followed.[4]

Homeowners raise the following issues:

1. Whether the trial erred by failing to find the Defendants liable for breach of contract?

2. Whether the trial court erred by failing to find the Defendants liable for breach of the implied warranty of reasonable workmanship regarding all aspects of the construction of the [Homeowners'] addition?

3. Whether the trial court erred by failing to find the Defendants liable for violation of Pennsylvania's [HICPA]?

4. Whether the trial court erred by failing to find the Defendants liable for violation of Pennsylvania's [UTPCPL]?

5. Whether the trial court erred by failing to find the Defendants liable under the theory of unjust enrichment?

Homeowners' Br. at 4 (suggested answers omitted).

Homeowners argue that they presented evidence proving by a preponderance each of the first five counts: breach of contract, breach of implied warranty of reasonable workmanship, violations of HICPA and the UTPCPL, and unjust enrichment. They claim that "[t]he trial court's [d]ecision was so manifestly erroneous and contrary to the evidence that the verdict must be reversed[.]" *Id.* at 41; *see also id.* at 43, 47, 50.

---

[4] After the appeal was taken, the case was transferred to a different trial judge because the judge who heard the trial was appointed to federal court. We therefore rely on the reasoning set forth in the decision of the judge who presided at trial.

Homeowners do not address count VII, for piercing the corporate veil, in their opening brief. However, Defendants' brief argues that Homeowners "failed to meet their burden to hold SDJ's principals personally liable[.]" Defendants' Br. at 35. Homeowners reply that the court found the individual defendants liable and argue that Defendants waived the right to challenge this finding by failing to file a motion for post-trial relief.

We will first address Homeowners' arguments that the court erred in denying their motion for JNOV on counts I through V. We review the denial of JNOV for an error of law that controlled the outcome of the case or an abuse of discretion. *Feldman v. CP Acquisitions 25, L.P.*, 325 A.3d 691, 700 (Pa.Super. 2024), *appeal denied*, 344 A.3d 359 (Pa. 2025).

> [A] JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our [standard] of review is [*de novo*]. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [fact finder] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*Youst v. Keck's Food Serv., Inc.*, 94 A.3d 1057, 1071 (Pa.Super. 2014) (quoting *Am. Future Sys., Inc. v. BBB*, 872 A.2d 1202, 1215 (Pa.Super.

2005)). Moreover, a verdict rendered by a trial judge sitting as fact finder "must be given the same weight and effect on appeal as the verdict of a jury[.]" *Discover Bank v. Booker*, 259 A.3d 493, 495 (Pa.Super. 2021) (citation omitted).

Homeowners first assert that the written, but unsigned, estimate constituted a binding agreement. They note that the estimate stated the addition would be constructed "per print" – which Homeowners argue refers to the blueprints. Homeowners argue that, in turn, the blueprints required that any changes be made with the approval of the architect and that the addition be constructed in accordance with the International Residential Code ("IRC"). *See* Homeowner's Br. at 38-39. Homeowners argue SDJ breached the terms of the estimate by deviating from the blueprints in: (1) the positioning of the main support beam and the beams supporting it, (2) the bolting of the beam, (3) the placement of hurricane clips on the roof sheeting, and (4) the size of the roof rafters. *See id.* at 39. They also argue they presented evidence of multiple IRC violations. *See id.* at 39-40.

We find no error of law or abuse of discretion. This is not a "clear case" such as warrants the entry of JNOV. Taking the testimony and evidence in the light most favorable to Defendants as the verdict-winners, Homeowners have not clearly established their right to relief on their breach of contract claims.

Regarding the support beams, Defendants offered testimony that SDJ deviated slightly from the blueprints when positioning the main support beam, so that the exterior part of a wall would not have to be demolished because

Homeowners desired to reside in the home during construction. *See* N.T., 3/26/24, at 71-75. According to the testimony, SDJ first discussed the change with Homeowners. *See id.* at 71, 74-75. SDJ added support posts in the basement to increase the support for the main beam. *See id.* at 73. SDJ discussed changes in the supports with the architect during construction. *See id.* at 271. The architect sent a letter to the township addressing the changes. *See* N.T., 3/25/24, at 165-67; N.T., 3/26/24, at 14-15, 133-34, 146-48. The architect testified that she determined the supports for the main beam were sufficient. *See* N.T., 3/26/24, at 136-37, 144-46.

Regarding the roof rafters, Defendants offered testimony that SDJ had used different sized lumber for the roof rafters than specified in the initial blueprints because the estimate proposed extending the new roof from the existing roof, which had a smaller rafter size. *See* N.T., 3/25/24, at 80, 92-93.[5] The architect "ran [a] calculation" for the change and approved the use of smaller rafters sistered together. *See* N.T., 3/26/24, at 172; *see also id.* at 171-73, 271. SDJ discussed the change with Homeowners and at trial produced a text message from Hanson approving the change. *See id.* at 200-01, 206-08. Homeowners' own expert in structural engineering admitted that sistering the smaller roof rafters would be acceptable if "verified by an engineered design." N.T., 3/25/24, at 256-57.

_____

[5] The blueprints for the addition called for 2x10s, and the existing roof used 2x8s.

Given the above, the evidence does not clearly prove that SDJ breached the estimate by deviating from the original blueprints regarding the support beams or the roof rafters. Rather, these deviations were done with the approval of the architect – which Homeowners concede was permitted by the terms of their agreement – and the approval of Homeowners' themselves. ***See CM Goat, LLC v. Valdez***, 318 A.3d 392, 397 (Pa.Super. 2024) (parties to an agreement may orally modify it).[6]

Regarding the hurricane clips and the bolting on the support beam, these issues are waived by Homeowners' failure to specifically include them in their motion for JNOV. ***See*** Pa.R.Civ.P. 227.1, Comment ("A post-trial motion must set forth the theories in support thereof").

Even if these issues were preserved, reasonable minds could disagree on whether these alleged deviations from the blueprints were material breaches that warranted termination of the agreement. ***See Widmer Eng'g, Inc. v. Dufalla***, 837 A.2d 459, 467-68 (Pa.Super. 2003) (stating a party may discontinue performance under a contract only upon a material breach by the other party); ***see also Umbelina v. Adams***, 34 A.3d 151, 159 (Pa.Super. 2011). Homeowners did not present any evidence that they raised these alleged discrepancies with SDJ before terminating the agreement. Rather, the architect testified that no one consulted her about the bolting or hurricane clips prior to SDJ's termination. While Yvon Larrivee conceded that the

_____

[6] We note the written estimate was not signed and did not contain an integration clause.

hurricane clips had been installed incorrectly, he testified it would have been an "easy fix" to add correctly installed clips. *See* N.T., 3/26/24, at 286.

Furthermore, the fact-finder was also free to accept Defendants' evidence that Homeowners terminated the agreement in bad faith. *See Francis v. LCP N. Third, LLC*, 293 A.3d 273, 279 (Pa.Super. 2023) (stating Pennsylvania law implies a requirement of good faith performance under a contract). SDJ offered testimony that it would have rectified all items within the scope of the estimate if it had not been abruptly terminated. *See* N.T., 5/1/24, at 83-84, 86-110.

Nor have Homeowners proven that the alleged code violations constituted material breaches of the agreement. Homeowners' expert in home inspection testified that he did not review the scope of the work as proposed by the estimate, or the architectural blueprints that SDJ had agreed to follow. *See* N.T., 3/25/24, at 150-52. Homeowners' expert in structural engineering similarly testified that he did not review the plans outlined by the estimate or discuss any perceived issues with the architect. *See* N.T., 3/26/24, at 8, 9, 10-11. Meanwhile, the architect testified that her plans were code-compliant and had been approved by the township. *Id.* at 127-28, 130-32. In the face of such conflicting evidence, the entry of JNOV on Homeowners' breach of contract claim is inappropriate. *Youst*, 94 A.3d at 1071.

We likewise find Homeowners have not established their right to relief on their claim for breach of implied warranty of reasonable workmanship. Homeowners present minimal legal authority supporting this claim and no

authority that code violations equate to a breach of the implied warranty or that this warranty applies when homeowners hire a contractor to complete work according to the homeowners' own blueprints. ***See Hosler v. Tweedlie***, 306 A.3d 361, 372 (Pa.Super. 2023) (recognizing that an implied warranty "that the construction of [a] new home was performed in a reasonably workmanlike manner" only applies where a builder-vendor sells a new home to a member of the public). Regardless, due to the conflicting evidence, reasonable minds could disagree as to whether SDJ breached any implied warranties, and therefore the court properly denied JNOV on this count.[7]

Homeowners next argue Defendants violated the HICPA by abandoning the project and/or failing to perform under the agreement. ***See*** Homeowners' Br. at 46 (citing 73 P.S. § 517.9). However, as stated above, Homeowners failed to present uncontested evidence that SDJ materially breached the agreement. Defendants presented evidence that SDJ was unable to remedy any minor breaches because Homeowners terminated the agreement in bad faith.

Homeowners also argue Defendants violated the HICPA by deviating from the blueprints without a written, signed change order. The relevant provision states,

No person shall: . . .

---

[7] Although the court found in Homeowners' favor on this count in part, regarding the chimney and fireplace, Defendants have not appealed that ruling.

(6) Deviate from or disregard plans or specifications, in any material respect, without a written change order dated and signed by both the contractor and owner, which contains the accompanying price changes for each deviation.

73 P.S. § 517.9(6). Here, SDJ did not change the cost of the estimate, and Homeowners do not argue any of SDJ's alleged deviations from the blueprints should have resulted in a price change. We will not disturb the trial court's denial of JNOV on this claim.

Homeowners next argue Defendants violated two provisions of the UTPCPL, prohibiting them from engaging in "unfair or deceptive acts or practices," including "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another," or "[m]aking repairs, improvements or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing[.]" 73 P.S. §§ 201-2(vii), (xvi) and 201-3. Homeowners argue, without further specificity, that Defendants deceived them by failing to construct the addition in accordance with the blueprints or the IRC. We again find that, due to the conflicting evidence, the court was not obligated to enter JNOV in Homeowners' favor.

Finally, Homeowners contend Defendants are liable under a theory of unjust enrichment. However, the relationship between the parties here was governed by an agreement, rendering this theory inapplicable. **See Joyce v. Erie Ins. Exch.**, 74 A.3d 157, 169 (Pa.Super. 2013). We affirm the denial of JNOV on this count.

We return to count VII, regarding the individual defendants' personal liability, raised in Defendant's brief. Defendants did not cross-appeal from the entry of judgment. "An appellee may not raise issues on appeal not raised by the appellant except by filing a cross-appeal." G. Ronald Darlington *et al.*, 20 West's Pa. Prac., Appellate Practice § 302:62 (Dec. 2025 update) (citing **Commonwealth v. Lenhoff**, 796 A.2d 338, 340 (Pa.Super. 2002)). Therefore, we will not address this issue.

Judgment affirmed.

President Judge Emeritus Ford Elliott joins the memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/8/2026